## RAYMOND *v.* WHITE.

1. CONTRACTS—DURATION—UNCERTAINTY.

An agreement to pay an inventor a specified sum weekly so long as devices invented by him are used by the other party in his manufactures, in consideration of which the inventor is to assign patents already obtained and to devote his time to the invention of improvements, is not void for uncertainty as to the time of its duration.[1]

2. SAME—TERMINATION.

A provision of the agreement empowering the manufacturer, in the event of his discontinuing entirely the business to which it relates, to terminate the weekly payments to the inventor upon written notice and assignment of a stated interest in the patents, but expressly providing that no such discontinuance shall occur so long as any device is manufactured under said patents, does not authorize a termination of the agreement upon notice and assignment, if manufacture under the patents is continued.

[1] Contracts for permanent employment, and similar agreements, is the subject of a note to *Carnig* v. *Carr*, ( Mass.) 35 L. R. A. 512.

3. SAME—REMEDIES—DAMAGES.

> Upon the manufacturer's attempting to terminate the agreement on notice and assignment, without discontinuing the use of the patented devices, the inventor is not limited to an action for damages as for a breach of the contract, but, having performed on his part, may sue upon it, and recover the weekly payments withheld.

Error to Kent; Adsit, J. Submitted January 24, 1899. Decided March 6, 1899.

*Assumpsit* by Silas H. Raymond against T. Stewart White and Thomas Friant to recover an amount due under a contract for the manufacture of a patented article. From a judgment for plaintiff, defendants bring error. Affirmed.

*Bundy & Travis* and *Charles Chandler*, for appellants.

*McGarry & Belden*, for appellee.

HOOKER, J. This action was commenced in justice's court, and, upon appeal, was tried before the circuit judge without a jury. His findings of fact and law are as follows:

"The parties in this cause being in court by their respective attorneys, ready for trial, and the issue joined therein having been brought on for trial before the court without a jury, and the said court, having heard the proofs and allegations of the parties, and the arguments of counsel, after mature deliberation therein, finds that on the 4th day of August, 1893, the plaintiff entered into a written contract with the defendants, which reads as follows:

"'Articles of agreement made and concluded this 4th day of August, A. D. 1893, by and between Silas H. Raymond, of Paris township, in the county of Kent and State of Michigan, party of the first part, and T. Stewart White and Thomas Friant, of Grand Rapids, county and State aforesaid, parties of the second part, witnesseth:

"'1. In consideration of the sum of one dollar, the receipt whereof is hereby acknowledged, and the further considerations hereinafter named, the party of the first part agrees as follows: To surrender all claims under and by virtue of a certain contract between the above-named parties, dated the 3d day of January, A. D.

1891; to turn over to said second parties all right, title, and interest in and to all carpet-sweeper inventions and devices heretofore invented by him, and to sign and execute proper and legal applications for patents on the same, and assignments thereof to said second parties, except as to such as are already so disposed of; to continue to use his best talent, and continuously exert himself to the best of his ability, to invent further improvements thereon and other analogous devices, which said devices and improvements, when so invented, he will in like manner make, sign, and execute applications for patents thereon, and also in like manner assign the same to said second parties.

"'2. In further consideration whereof, the second parties agree to pay the said first party the sum of twenty dollars ($20) each and every week during the continuance of this contract, payable weekly. Said second parties further agree to manufacture, or cause to be manufactured, either by themselves or others, such of said carpet-sweeper devices already acquired or to be acquired by them as they may deem advisable or profitable; and this contract shall continue so long as such manufacture shall embody any device covered by any patent so obtained and assigned, or to be obtained and assigned.

"'3. Said second parties further agree that, in the event of their effecting a sale of said patents or a license under the same, their assigns or licensees shall enter in a good and sufficient contract to carry out this contract with said first party.

"'4. It is further mutually agreed that in the event said second parties or their assigns should altogether cease and discontinue said manufacture, and desire to discontinue the services of said first party and the payment of $20 per week, they may do so by proper written notice, and assigning, by proper legal writing, a one-third interest in all patents on said carpet-sweeper devices issued or to be issued to said first party, and assigned by him as aforesaid; but it is expressly understood that no such discontinuance shall occur so long as any device or devices are manufactured under said patents as aforesaid.

"'5. It is also further mutually agreed that, in the event of the death or disability of said first party, said payment of $20 per week shall be continued and paid to his wife, Emma H. Raymond, or such other beneficiary as said first party may direct, subject to like conditions as to sale or discontinuance as aforesaid.

"'SILAS H. RAYMOND.
"'WHITE & FRIANT.

"'In presence of—
"'LOUIS E. FLANDERS.
"'LUTHER V. MOULTON.'

"I further find that, after the making of said contract, the said White & Friant entered into a contract with

Gaius W. Perkins and Charles J. Reed, and formed a partnership known as the Sweeperette Company; and that said Sweeperette Company entered into a contract with the Grand Rapids School-Seating Company to manufacture carpet sweepers, the said Sweeperette Company receiving a royalty from the said Grand Rapids School-Seating Company.

"I further find that the said Silas H. Raymond, at the date of said contract, to wit, on the 4th day of August, 1893, had already obtained eight patents on carpet sweepers, which had been duly assigned to the defendants under their former contract; and that, after the making of this new contract, the said Silas H. Raymond obtained eleven more patents on carpet sweepers, which were duly assigned to the defendants according to said contract.

"I further find that the plaintiff, on the 4th day of August, 1893, surrendered all claim under and by virtue of a certain contract between said parties, dated the 3d day of January, 1891, and turned over to said defendants all right, title, and interest in and to all carpet-sweeper inventions and devices invented by him, and signed and executed proper and legal applications for patents on the same and assignments thereof to said defendants; and that he continued to use his best talent, and continuously exerted himself to the best of his ability, to invent further improvements thereon and other analogous devices; and that, when devices and improvements were invented, he signed and executed applications thereon, and assigned the same to defendants.

"I further find that the defendants paid the plaintiff at the rate of $20 per week up to and including the 5th day of May, 1897, when the defendants served notice on the plaintiff in the following terms:

"'To SILAS H. RAYMOND.

"'*Sir:* Please take notice that we have decided to cease and discontinue, and have ceased and discontinued, the manufacture and causing the manufacture of carpet sweepers and carpet-sweeper inventions and devices under the contract between you and ourselves of date August 4, 1893, and hereby notify you that we have discontinued your services provided for in said contract, and, to that end, herewith hand you assignments, executed by the proper persons, of an undivided one-third interest in all patents which have been issued to us or our assigns under the terms of said contract.

"'May 5, 1897.

"'T. STEWART WHITE.
"'THOMAS FRIANT.'

" Attached to said notice, and delivered to the plaintiff therewith, was a duly-executed written assignment of a one-third interest in all patents which had been issued to Silas H. Raymond, or to his assigns, under either of the contracts above referred to, and which had been assigned to the defendants.

" I further find that after the 5th day of May, 1897, the said defendants, with the Sweeperette Company and the Grand Rapids School-Seating Company, continued to manufacture carpet sweepers which embodied devices covered by some of the patents obtained by the said Silas H. Raymond; that prior to the 5th day of May, when said notice was served, the Grand Rapids School-Seating Company, under their contract, was manufacturing carpet sweepers embodying some of the devices covered by the patents obtained by the plaintiff, and assigned to the defendants; and that said manufacture continued with no interruption or change whatsoever, and now continues at the present time, and the carpet sweepers manufactured after the 5th day of May, and up to and including the present time, are the same kind of carpet sweepers, embodying the same devices, covered by the Raymond patents, the same as were manufactured prior to the 5th day of May.

" I further find that after the 5th day of May, 1897, the said Silas H. Raymond continued to use his best talent, and continuously exerted himself to the best of his ability, to invent further improvements on carpet-sweeper and other analogous devices, and that he has carried out his part of the contract with no interruption.

" I further find that, at the time this suit was commenced, more than one week had elapsed after the 5th day of May, 1897, and that there was due to the plaintiff from the defendants, under said contract, at the time this suit was commenced, twenty dollars ($20).

" As a conclusion of law, I find that the contract is valid and still in force, and that, under the facts, the plaintiff is entitled to a judgment for twenty dollars ($20).

"ALLEN C. ADSIT,
"Circuit Judge."

Counsel for the defendants claim:

" *First.* That the contract was void for uncertainty.
" *Second.* That, if valid, by its terms, they had a right to terminate it.

"*Third.* That, in any event, the action should be for damages upon a breach of the contract, and that suit to recover the sum provided as compensation, upon the theory of performance, will not lie."

This contract is not a mere contract of service. It was an agreement under which the defendants acquired rights to manufacture a sweeper. In return, they promised to pay $20 a week to the plaintiff; that such payment should be made to his wife in case of his death; and this was to continue as long as the defendants should continue the use of his devices, or cause it to be done. It was also agreed that the plaintiff was to devote his time to the invention of improvements in carpet sweepers, for which he was to sign applications for patents, and assign the same to the defendants. We think there is nothing fatally uncertain about this contract. It contains an agreement to pay as long as the defendants shall use the devices. It does not fix the time that they are bound to continue to manufacture, and it may be true that they can cease to do so at will, thereby terminating the contract; but they were bound to commence the manufacture, and to pay as long as continued, and, on the other hand, the plaintiff was bound to give them the benefit of his inventions and his ability to invent. There is no want of mutuality in these promises, and the time that the contract was to continue was not uncertain, if it can be said to be indefinite.

The action was brought to recover plaintiff's earnings under the contract,—in effect, to recover an installment of the purchase price, or royalty. This was proper if it was earned; but counsel say that it was not earned, because they had terminated the contract, and, therefore, that plaintiff's remedy is in an action sounding in damages for a refusal to perform. Had the defendants never commenced the manufacture of the sweepers, the plaintiff would have had such a right of action; possibly he would have had no other. But the defendants did commence, and still continue, such manufacture. Their only right is based upon this contract. They claim the right to hold a

two-thirds interest in these patents, which can be based on nothing else; and it is the only basis for their right to manufacture at all. But they refuse to pay the consideration. So far the plaintiff has fully performed his contract, as he had a right to do; and he is entitled to his pay for so doing, according to the terms of the contract. If defendants saw fit to tender back a one-third interest in the patents, he need not accept it. If they refuse to accept the benefit of his services, he need not complain, unless he chooses to do so; and he is under no obligation to refrain from performing his part of the contract upon their request, although it be accompanied by a refusal to accept the result of his services or pay future installments of the contract price. We think the case is not within the principle of *Gillett* v. *Bowman*, 43 Mich. 477, and the judgment is affirmed.

The other Justices concurred.