THE ATLANTIC PEBBLE COMPANY, LIMITED, PLAINTIFF-
APPELLANT, v. LEHIGH VALLEY RAILROAD COMPANY,
DEFENDANT-RESPONDENT.

Argued March 7, 1916—Decided June 29, 1916.

1. Where a railroad company contracts to furnish free storage for
a cargo of pebbles pending their reshipment, from time to time
as sold, over its lines to customers throughout the country, but
the contract does not specify any fixed time for such sales and
reshipments, the presumption is that the parties contemplated
that the same would take place within what would under all the
circumstances be a reasonable time from the commencement of
such free storage for the making of such sales and reshipments.

2. The fact that one party may have expected that this time would
be shorter than the other did, does not constitute a failure of the
meeting of the minds of the parties necessary to a valid contract.

3. Where a promise has for its subject-matter something which by
the terms of the agreement is left to depend for its very existence
upon the future election of the promisor, it will not form a valid
consideration for an executory contract; but where such subject-
matter, in the normal and *bona fide* course of events as contem-
plated by both parties, is not thus left dependent, it will form
such valid consideration, although there may be elements of quan-
tity, requirement, selection, &c., agreed to be left to the future
discretion of the promisor.

4. The executed consideration for a promise is sufficient, if, induced
by the request expressed in or properly implied from the promise,
it be a benefit to the promisor, or a loss or detriment to the
promisee.

5. Where a promise is in effect an offer contemplating acceptance by
performance of a certain condition coupled with the entering into
of a reciprocal promise by the offeree at the time of such per-
formance, the performance of the condition under the circum-
stances contemplated, before a withdrawal of the offer, gives rise
to a valid executory contract wherein the original promise is sup-
ported by the reciprocal promise arising upon the performance of
the condition, irrespective of whether such performance is a bene-
fit to the promisor or a detriment to the promisee.

On appeal from a judgment of nonsuit entered by the Cir-
cuit Court of Somerset County.

For the appellant, *John F. Reger*.

For the respondent, *Charles B. Bradley* (*Collins & Corbin* on the brief).

The opinion of the court was delivered by

WHITE, J.   This suit was brought to recover $5,657.12, being the amount of certain storage charges paid under protest by the appellant upon a large quantity of flint pebbles belonging to it, and which it shipped by boat from Newfoundland to the covered pier of the Philadelphia and Reading Railroad Company in Philadelphia, in pursuance of an arrangement with the respondent, a railroad company with whose lines the Philadelphia and Reading Railroad Company's lines connected, whereby the respondent had agreed that if appellant would make such shipment and would then from time to time reship over respondent's railroad, paying its proper freight charges for such reshipments, as sales were made of the pebbles into the interior of the country, wherever respondent should offer equally satisfactory facilities and rates with other lines, the respondent would furnish on such pier free storage facilities for said pebbles while awaiting such sales and orders for reshipment.   In pursuance of this arrangement two shiploads of pebbles had been shipped and placed on said pier at Philadelphia and had remained there, as to part of the first cargo at least, without storage charge for a year, while sales were being made, and the portions of both cargoes which were sold were, as sold, reshipped over respondent's lines and its freight charges therefor were duly paid. When it was proposed to ship a third cargo the respondent objected to the length of time which seemed to elapse before sale of all the pebbles of each cargo was completed, and stipulated that unless an additional six hundred tons of the stock of pebbles then on the pier were first "moved," that is sold and reshipped, the respondent would not furnish free storage for the third cargo.   Appellant thereupon sold and reshipped over respondent's lines the six hundred additional tons as thus required, and the third cargo was thereupon shipped with respondent's express consent and placed on the covered pier under the terms of the arrangement.   Some two months

later respondent notified appellant that the latter would forth-with have to remove the pebbles from this pier as the Philadelphia and Reading Railroad Company needed the space which the pebbles occupied, and that respondent would not thereafter furnish free storage for the pebbles. Appellant declined to accede to this demand, claiming that it was a violation of respondent's contract; whereupon the pebbles were placed by the Philadelphia and Reading Railroad Company in storage with the Philadelphia Warehousing Company subject to appellant's order and at its expense. Appellant then sold the pebbles as rapidly as possible and reshipped them over respondent's lines, but was compelled to and did pay, under protest, to the Philadelphia Warehousing Company the storage charges, the amount of which it now claims as damages for the breach by respondent's contract to furnish free storage.

The learned trial judge took the view that the agreement to furnish free storage was without consideration and entered a judgment of nonsuit.

It is now urged in support of this judgment, first, that the contract was without consideration; second, that as to the pebbles in question, to wit, those which had not been sold and reshipped over respondent's lines, the arrangement was at most but an outstanding proposal revocable at any time before acceptance by such reshipment, and that it was in fact revoked before such acceptance; third, that there was no meeting of the minds of the contracting parties, because one of them contemplated a much shorter period of free storage than the other did, and fourth, that respondent's undertaking was revocable at any time because at most it contemplated the procuring of a mere revocable license. With the exception of three minor points which are treated as incidental to the foregoing, as in fact they are, no other grounds for supporting the judgment were urged nor have we considered any other ground.

As to the third point—that the minds of the parties did not actually meet because one of them contemplated a shorter period of free storage than the other did, it is sufficient to

say that the difference, if any, was a difference in expectation as to the time which would be required for performance, rather than a difference as to the terms of the agreement itself. This is clearly indicated by respondent's letter to the appellant when protest was made prior to the shipment of the third cargo from Newfoundland, wherein it said, "It was not expected at the time of the original arrangement that the property would be held for so long a period and the space available for this purpose on terminals of the Philadelphia and Reading Railway is largely occupied;" and again, on October 27th, 1911: "As stated in my letter yesterday, you are holding these pebbles beyond the time originally contemplated, and we shall expect you to handle them more freely in the future." Either this language means "the time originally contemplated" by *both parties,* in which case of course the minds did meet, or else it means contemplated or expected by the respondent alone.

It may well be that one party did expect that each cargo of pebbles would be sold within two months after being placed on the railroad pier at Philadelphia, and that the other expected that a longer time would be consumed. Neither party, however, saw fit to make this expectation one of the terms of the contract, but both were content with the general stipulation that the free storage should continue until the pebbles should be sold. So far as the express terms of the contract were concerned, therefore, there was a complete meeting of the minds, and in the absence of a provision defining the time for complete performance, the presumption is that such performance was to be within a reasonable time. What that is depends upon the circumstances of each case. Both parties are presumed to have had in mind, as an unexpressed term of the contract they entered into, a period for complete performance, which, in view of the existing conditions, and viewed in the light of their own actions, it is reasonable to suppose they had in contemplation. Not having seen fit to reduce it to definite, expressed form, the circumstances surrounding the transaction, taken in connection with its character or nature, and the actions of the parties themselves, will deter-

mine this unexpressed and otherwise undefined term of the contract. One of the parties to such a contract cannot, therefore, escape its obligations on the ground that he expected it would be performed within a shorter time than that which, under the circumstances, was a reasonable time for its performance. What was a reasonable time in the circumstances of this case was clearly a jury question. There was ample evidence arising not only from the character of the merchandise but from the actions of the parties themselves with reference to the two previous cargoes, to indicate that a longer period than two months was reasonable for the completion of the sales of the third cargo. The nonsuit cannot, therefore, be sustained on the ground that the minds of the parties did not meet as to the time of performance.

Turning now to respondent's first claim, and the one upon which the learned trial judge rested his decision, namely, that the promise of free storage was without consideration— it is urged that the pebble company, appellant, did not promise to ship any pebbles at all to Philadelphia in pursuance of the arrangement, and that consequently there was no reciprocal undertaking on the part of the appellant to support the promise by the respondent.

The doctrine of a purely executory contract, where the reciprocal promises depend upon each other for support, is of course elementary. Cases in this state are: *Buckingham* v. *Ludlum,* 40 *N. J. Eq.* 422, affirmed in 41 *Id.* 348, and *United and Globe Rubber Co.* v. *Conard,* 80 *N. J. L.* 286. The trouble is sometimes to determine what are and what are not such promises. While it seems difficult to entirely harmonize all of the decisions bearing upon the phase of this doctrine here involved, there are two cases in Massachusetts, one of which is a fair illustration of circumstances which do not constitute such a promise as will support the reciprocal agreement, and the other of circumstances which do constitute such a promise. In *Thayer* v. *Burchard,* 99 *Mass.* 508, the defendants, who were operating a railroad for the benefit of bondholders, wrote to the plaintiffs, who were grain merchants

buying flour and grain in the west, that defendants would transfer flour and grain at $4 per ton, "this rate to continue in force until the close of navigation unless notice to the contrary." The plaintiffs answered: "We accept the proposal." It was held that this constituted a mere offer on the part of the defendants and was not a contract, because the plaintiffs did not come under any obligation to the defendants to furnish any flour or grain for transportation, and were at liberty to buy grain or not, as they chose, and if they bought it to ship it by defendants' road or by other lines, just as they saw fit. In *Burgess Sulphite Co. v. Bloomfield,* 180 *Id.* 283; 62 *N. E. Rep.* 367, on the other hand, the agreement was: "to buy at $12 per ton all the old scrap iron that you desire to sell, you to select the same," which agreement was "accepted" by the seller. This contract was made with reference to old machinery and other scrap iron which the seller was about to cull out of his mill which the parties looked over at the time. The court held that there was a binding obligation upon the part of the seller to sell to the purchaser all the scrap iron then in the seller's mill and yard, which, in the contemplation of both parties, it was the seller's then present purpose to sell, the selection only being left to him instead of both parties being put to the additional waste of time and expense of culling out the scrap iron before making the contract; and that it consequently constituted a valid consideration for the purchaser's undertaking to pay for it at the price stipulated. Numerous other cases illustrative both of promises not sufficient to constitute a valid consideration and promises which are sufficient are cited in *Willis. Sales* 798.

The distinguishing principle may possibly be stated to be that where the promise has for its subject-matter something, which by the terms of the contract is left to depend for its very existence upon the future election of the promisor, it will not form a valid consideration for an executory contract, but where such subject-matter, in the normal and *bona fide* course of events as contemplated by both parties is not thus left dependent, it will form such valid consideration, although

there may be elements of quantity, requirement, selection, &c., agreed to be left to the future discretion of the promisor.

In the present case, the promise to reship over the lines of the respondent company was left to depend entirely upon the contingency of whether or not the appellant should decide to ship any pebbles at all to Philadelphia. We think, therefore, that standing alone and without further action on the part of the appellant, the promise of free storage by the respondent cannot be supported as a purely executory contract by the reciprocal stipulation or promise that if appellant did send pebbles to Philadelphia, it would reship them over respondent's lines, because the entire existence of the subject-matter of the latter promise was left to depend upon the future voluntary discretion of the appellant.

We do think, however, that the promise of free storage as here made was an offer on the part of the respondent which contemplated acceptance, so far as the sending of the pebbles to Philadelphia was concerned, by performance on the part of the appellant, and that there was such performance. The promise was, "if you will ship a cargo of pebbles to Philadelphia, and reship them exclusively over our lines as sold, we will furnish you free storage." As above stated, the appellant did not undertake to ship any pebbles to Philadelphia, but if it did do so in pursuance of that offer, while that offer remained open for acceptance by performance, there was an acceptance of the offer by performance, which, if a benefit to the promisor or a detriment to the promisee, completed a binding contract.

The broad doctrine upon this point may be stated to be that the executed consideration for a promise is sufficient, if, induced by the request expressed by, or properly implied from, the promise, it be a benefit to the promisor or a detriment to the promisee. *Holt* v. *United Security Life Insurance Co.,* *74 N. J. L.* 795, citing *Shadwell* v. *Shadwell,* 9 *C. B.* (*N. S.*) 159; *S. C.,* 6 *Rul. Cas.* 9 and notes, and *Conover* v. *Stillwell,* 34 *N. J. L.* 54.

There is, however, another element in the contract which

we think rendered the promise of free storage binding upon the respondent upon the shipment of the pebbles to Philadelphia as stipulated in the offer, quite irrespective of whether what appellant did was a detriment to it or a benefit to respondent. This element consists in the fact that by actually shipping the pebbles to Philadelphia and placing them on the pier provided by respondent and claiming free storage for them on that pier in pursuance of respondent's offer and request, the appellant agreed to respondent's stipulation that reshipment should be made exclusively over the latter's lines. In effect, respondent's proposition was, if you decide to ship a cargo of pebbles to Philadelphia, and do ship them, and will thereupon agree to reship exclusively over our lines, we will furnish free storage for them until sold. Acceptance of this offer was to be by performance, so far as shipping the pebbles to Philadelphia was concerned, but also by the entering into a reciprocal agreement for exclusive transportation in case of this performance. This acceptance in its entirety took place as above outlined, and, consequently, there were from the time of the placing of the pebbles on the pier in question a promise on the one side to reship exclusively (subject to certain conditions) over respondent's lines, and on the other a reciprocal promise to furnish free storage. These promises then became mutually supporting and constituted an executory contract binding upon both sides.

We think, therefore, that as to the cargo, or parts of cargoes of pebbles here involved, there arose, upon their being placed upon the pier in question, a valid contract binding upon respondent to furnish the free storage in question, and that appellant was entitled to recover its proper damages for a breach of this contract, if there was a breach of it.

This view, of course, disposes of respondent's second claim, and an examination of the evidence convinces us that the contract as entered into negatives the contention set forth in respondent's fourth claim.

For the reasons given the judgment of nonsuit is reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 14.