CARL ROESSLER *vs.* WAYNE BURWELL.

MALTBIE, C. J., HAINES, BANKS, AVERY and DICKENSON, JS.

Argued November 7th—decided December 5th, 1934.

*Maxwell H. Goldstein,* with whom was *T. Holmes Bracken,* for the appellant (defendant).

*A. Robert Levett,* with whom was *William B. Turley,* and, on the brief, *David M. Reilly,* for the appellee (plaintiff).

MALTBIE, C. J.   The basic facts in this case, as found by the trial court, with the addition of certain others as to which there is no dispute, are as follows: The plaintiff, since some time previous to 1926, has been engaged in the business of manufacturing delicatessen products and selling them to retail stores in New Haven County and its vicinity.   In 1926 the defendant entered his employment as a salesman.   The plaintiff went personally, with the defendant, to the places of business of his customers and introduced the defendant as his salesman.   From that time until October 10th, 1929, the defendant continued in the plaintiff's employment without any written agreement, working for a weekly salary.   On that day the parties entered into a written agreement.   This recited that the employer was the manufacturer and distributor of delicatessen products in the towns of New Haven, West Haven, and other cities and towns in this State, and that he had in his employment and desired to continue to employ ——, to call upon his present customers and to procure new customers and business in that region, and that the employee desired to continue in the employment under the conditions fixed in the agreement.   It then went on to provide, among other things, that the employer agreed to employ the defendant as salesman "indefinitely,"

and the employee accepted the employment, to be compensated by "such weekly wages as may be mutually agreed upon between the parties from time to time, not inconsistent with this agreement;" that in the event the employer should discharge or discontinue the services of the employee for any cause whatsoever, the employee would not for a period of one year after severing his connection with the employer, call upon, or directly or indirectly, in any capacity, solicit the same business from, any of the customers of the employer in the locality specified, whom he had called upon during his term of service with the employer; and that should the employee violate any of the provisions of the agreement, the employer should be entitled to relief by injunction or other process of law, to restrain the defendant from interfering with or soliciting any of such customers.

The defendant thereupon began work for the plaintiff under the terms of the agreement and continued until he voluntarily left his employment in January, 1934. During this time different amounts were paid to the defendant as weekly wages, and were voluntarily accepted by him without objection or protest. In November, 1932, and thereafter, due to conditions which affected the plaintiff's business, he reduced the defendant's salary until, when the defendant left, he was receiving $25 a week. In 1932 and 1933 there were times when the depression in the plaintiff's business made it impossible for him to give the defendant a full week's employment as salesman and he requested the defendant to perform work of a different character. Upon all these occasions the defendant performed the work voluntarily and without objection or protest. On January 13th, 1934, the defendant left the employ of the plaintiff for the purpose of entering into business in his own behalf, in the sale

of a similar line of products to that manufactured and sold by the plaintiff. Claiming that he was not bound by the terms of the agreement, he began to solicit orders for products similar to those manufactured and sold by the plaintiff, from the latter's customers, whose names and places of business he had learned during his employment with the plaintiff. Because of the friendly relationship between the defendant and these customers, some of them gave him orders for goods, with the result that they naturally would buy less of the plaintiff's products. The plaintiff brought this action for the purpose of securing an injunction restraining the defendant from soliciting, canvassing or interfering in any way with the plaintiff's customers. The trial court found the issues in his favor and caused judgment to enter restraining the defendant from directly or indirectly calling upon, soliciting, diverting, or attempting to solicit, divert, or take away certain customers of the plaintiff, whose names are listed in the judgment-file, and from that judgment the defendant has appealed.

The issue raised by the appeal particularly stressed by the appellant is that the agreement of October, 1929, was so vague and uncertain in its terms as not to constitute a contract, and, therefore, furnished no basis for the injunctive relief sought. It is an established principle of the law of contracts that an agreement too indefinite and vague for enforcement at its inception may be made definite by entire or partial performance, and even though originally unenforceable, may thereby become binding. *Palumbo* v. *Fuller Co.*, 99 Conn. 353, 362, 122 Atl. 63; *El Dorado Ice & Planing Mill Co.* v. *Kinard,* 96 Ark. 184, 189, 131 S. W. 400; *Atlantic Pebble Co.* v. *Lehigh Valley R. Co.,* 89 N. J. L. 336, 343, 98 Atl. 410; 1 Williston, Contracts, p. 82; 1 Page, Contracts, § 103. While it does not

appear from the finding that the plaintiff and defendant, after making the agreement, at any time did in terms mutually agree as to the salary to be paid to the defendant, the actual payment of various sums to him from time to time and his acceptance thereof without objection, constitutes an implied agreement that they were the amounts properly due him under the terms of the agreement. The underlying purpose of the defendant in entering into the agreement was to continue thereafter in the employment of the plaintiff at a mutually agreeable salary; the benefit offered him was such a continuance, in return for which the plaintiff was to receive his services and the benefit of the restrictive covenant in the agreement. The defendant received the benefit he sought in that he was continued in the employment more than four years after the agreement was made, until he voluntarily left it. In such a situation, what is said in *Willetts* v. *Sun Mutual Ins. Co.*, 45 N. Y. 45, 47, is applicable: "Though there be not mutual promises, yet if, before he calls for the fulfillment of the promise, the promisee do perform that, in consideration of his doing which the promise is made, there is a consideration for the agreement, and it can be enforced." See *Wisconsin Ice & Coal Co.* v. *Lueth*, 213 Wis. 42, 250 N. W. 819; *Raymond* v. *White*, 119 Mich. 438, 78 N. W. 469. The plaintiff, having paid the defendant a weekly salary satisfactory to him, from the time when the agreement was made, and having continued the defendant in his employment until he voluntarily left, has given to the defendant the benefit for which he bargained, and has, by performance, made certain that which before was uncertain; the restrictive covenant is in itself sufficiently definite; and after the withdrawal of the defendant from the plaintiff's employment, it was founded upon an adequate consideration

given. In so far as the case of *Clark Paper & Mfg. Co.* v. *Stenacher,* 236 N. Y. 312, 140 N. E. 708, holds to the contrary, we are not able to follow it.

In *Samuel Stores, Inc.* v. *Abrams,* 94 Conn. 248, 253, 108 Atl. 541, 9 A. L. R. 1450, we stated the test for determining whether the restrictive covenant of an employee made with his employer was valid, in this way: "In dealing with a restrictive stipulation between an employer and an employee, as in this case, in order that the court may uphold and enforce the restriction, if it is not otherwise contrary to public policy, the court must find that the facts alleged disclose a restriction on the employee 'reasonably necessary for the fair protection of the employer's business or rights, and not unreasonably restricting the rights of the employee,' due regard being had to the interests of the public, and the circumstances and conditions under which the contract is to be performed." See also *Styles* v. *Lyon,* 87 Conn. 23, 86 Atl. 564. The restrictive covenant in this case contains a provision that the defendant, after terminating his employment, would not "call upon" any customers of the plaintiff in the locality specified, whom he had called upon during his term of service with the plaintiff. The intent of the parties clearly was, and the covenant must be construed, to restrict this provision to calls made upon such customers for the purpose of soliciting from them the same type of business which the defendant had previously obtained for the plaintiff. So construed, the covenant was reasonable and valid within the rule which we have quoted. The time was only for one year, and while the statement of the locality itself was broad, the covenant was definitely restricted to the solicitation of customers of the plaintiff. The defendant was in no way restricted from entering into the same business anywhere he chose, nor in taking any

proper means to build up such a business and secure customers, so long as he did not attempt to take away from the plaintiff his own customers. The limitation of the solicitation to such customers was one well calculated to afford to the plaintiff a reasonable protection in his business against deprivation of customers with whom the defendant had very likely established friendly relations, and whom he could approach upon the definite basis of affording them as good or better service than the plaintiff had done in the past. Such covenants are generally upheld. *Becker College* v. *Gross,* 281 Mass. 355, 183 N. E. 765; *Deuerling* v. *City Baking Co.,* 155 Md. 280, 141 Atl. 542; *Eureka Laundry Co.* v. *Long,* 146 Wis. 205, 131 N. W. 412; *Granger* v. *Craven,* 159 Minn. 296, 199 N. W. 10; *McCall Co.* v. *Wright,* 198 N. Y. 143, 91 N. E. 516.

The defendant has not pleaded, the court has not found, and we are not asked to correct the finding to show, that the plaintiff was guilty of a breach of the agreement, nor would any correction in the finding which we could make establish that he had been guilty of such inequitable conduct as ought to debar him from the remedy he seeks. The exclusion of the questions as to the intention of the plaintiff in securing the covenant from the defendant, so far as appears, falls within the rule that it is not "the intent the parties may have had, . . . but the intent they have expressed in their agreement," that is controlling. *Colonial Trust Co.* v. *Hilton, Inc.,* 111 Conn. 77, 83, 149 Atl. 513. The other ruling on evidence of which complaint is made was harmless, even if erroneous.

There is no error.

In this opinion the other judges concurred.