## NESKO CORPORATION *v.* HARVEY E. FONTAINE

| COURT OF COMMON PLEAS | JUDICIAL DISTRICT OF WATERBURY | FILE NO. 13258 |
| --- | --- | --- |

Memorandum filed February 19, 1954.

*Vincent P. Matasavage,* of Waterbury, for the plaintiff.

*Alfred L. Finkelstein,* of Waterbury, for the defendant.

MEYERS, J. The plaintiff seeks to enjoin and restrain the defendant, a former employee, from competitive employment, relying upon their agreement, which contains restrictive covenants on defendant's occupational rights after the severance of the relationship of plaintiff as employer and defendant as employee. Damages of $5000 and other equitable relief are sought by the plaintiff. The defendant has demurred on grounds hereinafter discussed.

Paragraph one of the complaint which is demurred to alleges: "The plaintiff was and is engaged in the business of selling, supplying and installing aluminum and other types of storm windows and doors in the vicinity of Waterbury and neighboring towns and has built up an established trade therein."

The words indicative of the sphere or area of business operations as used above are defined as the "[q]uality or state of being near, or not remote; nearness; propinquity; proximity; as, towns in close *vicinity.* . . . A region about, near, or adjacent" and "[l]iving or being near; adjacent." Webster's New International Dictionary (2d Ed.).

The problem is to determine how far the parties may go in establishing, in the employment contract, the maximum legal protection for the employer. At what point does the contractual restraint of the employee's future occupational rights become overambitious in its encompassment? While the true line between a proper restraint and an improper one is most difficult to discern, if the contract gives clear evidence that the employer has grasped too much, he will be deemed to have forfeited his right to the protection sought.

In the process of determining whether or not a restriction in restraint of occupation is effectual, and therefore enforceable, proper concern must be shown for the nature of the promise. Of importance, for instance, are whether or not this is wider than is necessary for the protection of the plaintiff and what its consequences upon the promisor are. 5 Williston, Contracts (Rev. Ed.) § 1636.

It is established that judicial notice may be taken of the geography of a state, the existence, location and population of its counties, cities and villages, distance between well-known points, general routes of travel, etc. 20 Am. Jur. 74-81, §§ 50-57. It is common or general knowledge that the area within a thirty-five mile circle superimposed upon our official map, the center of this circle being allowed as the middle of Waterbury rather than the outskirts, includes physically a great part of five of the most densely populated counties of our state and a part of southern Massachusetts and eastern New York. As to that portion of the foregoing which is in Connecticut, there would be included all but one of the cities of the state in excess of 50,000 population, and all but twenty-one of those with a population of 5000 or more. The population so contained, apart from that of the other two states mentioned, amounts in excess of 1,550,000 people. Official Map of Conn. (Copyright, General Drafting Co., Inc.); Conn. Reg. & Manual (1953), pp. 522-527.

Paragraph 3 of the complaint refers to and makes part thereof a copy of a "Memorandum of Agreement," marked exhibit A. Examination of Paragraphs 1 and 10 of that instrument discloses that it is possible for the defendant to have been employed for one day or less, give or be given undefined notice, quit or be relieved, and still be somewhat ingeniously beholden to the plaintiff for a two-year period, as is set out in the following provisions

of this same exhibit A: "5) The Employee agrees that during the period of his employment and for two (2) years thereafter he will keep secret and will not divulge or allow to be divulged to any party except by the express order of the employer, the names and/or addresses of those who may be or may have been customers of the Employer during the period of the employee's employment, and further agrees that he will not divulge any information concerning the business methods of the Employer or concerning the business of any of said customers with the Employer. 6) The Employee agrees also that for the period of two (2) years after the termination, for any cause, of said employment that he will not either in competition with or for a competitor of the Employer, solicit, sell or install, to any of the Employer's customers whom said Employee may in the course of his employment have served. 7) The Employee also agrees that for the period of two (2) years after the termination, for any cause, of said employment that he will not either in competition with or for a competitor of the Employer, the NESCO CORPORATION, sell, solicit or install, within an area of 35 miles from the city of Waterbury."

Before any agreement by a salesman not to compete with his employer after the expiration of his time of service is to be upheld, protection from possible danger of loss to the employer's business caused by unjust use of confidential and trade secrets acquired in such business must be evident. 5 Williston, op. cit., § 1646. Since there are here no manufacturing secrets or formulas involved, it seems to this court that knowledge of who are customers might be the sole knowledge imparted to the defendant which is other than completely general.

Without regard to contractual obligation, the mere knowledge of itself of a deliveryman or other

personal solicitor of the names and addresses of his employer's customers, gained during the performance of his duties, is not a trade secret; such information is too readily discoverable; further, there exists a reluctance to deprive the employee of his subjective knowledge acquired in the course of employment. *Goldberg* v. *Goldberg*, 205 App. Div. 435, 439 (N.Y.); *Bond Electric Corporation* v. *Keller*, 113 N.J. Eq. 195, 197.

It is well known that an employee gives little thought to a restriction, such as we are concerned with, because he is anxious and therefore intent upon getting the job and is willing to make such promises as are declared necessary as a condition precedent. On the other hand, the employer, too, is engaged in a struggle for survival and may attempt every effort to gain and retain the good will of his customers. A reasonable balance must be maintained, and each conflict must be fully evaluated on its own.

Almost without exception, the law is that where the restriction is excessive, ab initio, and its reach is greater than is necessary for the employer's protection against "unfair" competition, or it provides for restraint of the employee from competing, after the termination of his employment, in a territory exceeding that in which the employer does his business, as is alleged in the complaint in the instant case, the restriction has been considered excessive and therefore invalid. *Kinney* v. *Scarbrough Co.*, 138 Ga. 77, 81; *Steinmeyer* v. *Phenix Cheese Co.*, 91 N.J.L. 351, 352; *Milwaukee Linen Supply Co.* v. *Ring*, 210 Wis. 467.

In this, Connecticut parallels the majority. Such law is well stated in *Mattis* v. *Lally*, 138 Conn. 51, 54: "This is a contract in restraint of trade. The test of its validity is the reasonableness of the restraint it imposes. Restatement, 2 Contracts § 514;

5 Williston, Contracts (Rev. Ed.) § 1636; 3 Pomeroy, Eq. Jur. (5th Ed.) § 934a; 36 Am. Jur. 544, § 65. To meet this test successfully, the restraint must be limited in its operation with respect to time and place and afford no more than a fair and just protection to the interests of the party in whose favor it is to operate, without unduly interfering with the public interest. *Cook* v. *Johnson,* 47 Conn. 175, 176; Restatement, 2 Contracts §§ 515, 516(a); 2 Page, Contracts (2d Ed.) § 777; see *Mitchell* v. *Reynolds,* 1 P. Wms. 181, 24 Eng. Rep. 347; *United States* v. *Addyston Pipe & Steel Co.,* 85 F. 271, 279.''

In the *Mattis* case, however, the defendant vendor of a business restricted himself at time of sale of business and good will. Restrictive stipulations in such cases are more readily enforceable than in the case of employer-employee relationships. *Samuel Stores, Inc.* v. *Abrams,* 94 Conn. 248, 253. The latter case, in the field of restraint and interference with individual liberty of action, attempted through restrictive occupational covenants, is quoted in almost all of our subsequent Connecticut cases involving this subject matter. It is important to our creative law and does much to define and regulate such problems. On its own facts, it held that a restriction somewhat like the one in the case at bar exceeded that which was reasonably necessary to protect the business of the employer and was therefore invalid.

A much more recent case, *Roessler* v. *Burwell,* 119 Conn. 289, because of its decision at first blush would seem to have strayed from the reasoning of the *Samuel Stores* case, supra. However, an examination of the facts leads to another conclusion. Briefly, in the *Roessler* case, the employer was a manufacturer rather than a retailer; his customers were a limited, defined and listed group of merchants and did not include just any end user; the employee was not to solicit the same business from

any of the listed Roessler customers whom he had called upon for Roessler; it was not a case of including just anyone in a given area. The *Roessler* case involved a restriction definitely necessary and not unreasonable in its limitation.

In the *Samuels Stores* case, supra, as in the case at bar, the covenant restricting the occupational activities of the employee after his employment was not sufficiently partial or limited in its operation in respect to time and place.

Finally, the public has an interest in the inviolable freedom of choice and pursuit by all of their several occupations. People in general would be harmed unless guarded legal limitations circumscribed these covenants. Such restrictions should afford only a fair protection to the interest of the party in whose favor they are made and must not be so large or grasping in operative scope as to possibly interfere with the public interest; neither should they seek unnecessary and inequitable restraint or be unduly harsh on an employee. *Cook* v. *Johnson,* 47 Conn. 175, 176; *May* v. *Young,* 125 Conn. 1, 5; *Samuel Stores, Inc.* v. *Abrams,* supra. Should the restraint requested in this case be granted, noncontiguous and distant towns and cities, places wherein the defendant does not do business and have customers, nonneighboring towns to Waterbury in a considerable number and of great population, in ratio to our entire state, would be included.

The complaint in the case at bar fails to spell out a cause of action. It must depend upon restrictive covenants which are unreasonable to the defendant, unnecessary to the plaintiff and prejudicial to the public, and therefore not enforceable. *Morris* v. *Saxelby,* [1916] 1 A.C. 688.

The demurrer is sustained; an injunction ought not to issue.