[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM ON PLAINTIFF'S APPLICATION FOR TEMPORARY INJUNCTION
The complaint in this matter is dated July 29, 1997, with a return date of August 26, 1997. The plaintiff, R C Livolsi, verified the complaint on that date and submitted it with a bond as is required by our practice when a party is seeking a temporary injunction. The court granted an order to show cause directing the defendant to appear before the court on August 28, 1997. The matter was continued on that date until September 8, 1997, when the parties appeared and were heard on plaintiff's application for a temporary injunction requesting the court to command and enjoin the named defendant to refrain and desist from soliciting for or engaging in any hair salon business in Hamden, Connecticut, or within ten miles thereof temporarily until final hearing or for twelve months from the date hereof until the claims as set forth in this action are fully resolved until the return date of the writ and complaint until further order of the court.
Plaintiff amended its complaint on September 4, 1997. The first count alleged a written agreement between the plaintiff and the defendant dated June 24, 1994, containing covenants CT Page 10255 prohibiting the defendant upon termination of his employment from engaging in a business similar to plaintiff's in Hamden, Connecticut, or within ten miles of Hamden, Connecticut, for a period of twelve months. It alleged a violation of this agreement by defendant which has caused and will cause plaintiff irreparable harm for which the law will provide no adequate remedy.
In count two the plaintiff alleges the defendant committed an unfair trade practice in violation of § 42-110a, et seq., by intentionally and fraudulently misrepresenting to the plaintiff that he would adhere to their employment agreement. Both parties filed legal memoranda prior to and subsequent to the hearing.
At the hearing defendant filed a written motion to dismiss plaintiff's complaint and application for temporary injunction.
 I
Defendant contends that plaintiff has no standing before the court because the "Salon Employment Agreement" (Plaintiff's Exh. B) containing the restrictive agreements is an agreement between defendant-employee and V. Farricielli, employer, and not plaintiff, R C Livolsi, Inc. Plaintiff's Exhibit B, the "Salon Employment Agreement" is dated June 24, 1994. Plaintiff's Exhibit A is a copy of a "Certificate Amending or Restating Certificate of Incorporation". This exhibit indicates that V. Farricielli, Inc. changed its name to R C Livolsi, Inc. on December 23, 1994. The court finds that Christine Livolsi purchased the stock of V. Farricielli, Inc. on December 24, 1994. The court further finds that the holding in Torrington Creamery, Inc. v. Davenport,126 Conn. 515, 521 (1940) will support the standing of the plaintiff on these facts. The court therefore denies defendant's motion to dismiss plaintiff's complaint and plaintiff's application for a temporary injunction.
 II
In general, in order to be entitled to a temporary injunction, a plaintiff bears the burden of establishing a probability of success on the merits that it does not have an adequate remedy at law and that a substantial and irreparable injury is imminent. Connecticut Association of ClinicalLaboratories v. Connecticut Blue Cross, Inc., 31 Conn. Sup. 110,113 (1973). A temporary injunction should not issue unless the CT Page 10256 rights of the parties seeking it are clear and it is reasonably certain that in the end the plaintiff will prevail particularly since no appeal lies from the issuance of a temporary injunction in matters such as this. In the absence of statutory exceptions, decisions either granting or denying temporary injunctions are not final judgments and are therefore not immediately appealable.Board of Education v. Shelton Education Association,173 Conn. 81, 88 (1977). The primary purpose of a temporary injunction is to preserve status quo until a final determination of the parties' rights after a hearing on the merits. Olcott v.Pendleton, 128 Conn. 292, 295 (1941). Granting temporary injunction relief lies within the court's sound discretion.Covenant Radio Corp. v. Ten Eighty Corp., 35 Conn. Sup. 1, 3-4
(1977). A temporary injunction should not issue unless the rights of the parties seeking it are clear, and it is reasonably certain that in the end the plaintiff will prevail. A temporary injunction should only be issued to prevent a serious and irreparable injury. A court has the power to deny injunctive relief when an injunction would adversely affect the interest of the public.
 III
The defendant claims that the noncompete clause contained in the "Salon Employment Agreement" (Plaintiff's Exh. B) is unreasonable and contrary to public policy. This agreement reads as follows:
SALON EMPLOYMENT AGREEMENT
 Agreement made by and between V. Farricielli's, hereinafter employer, and David R. Campanelli, hereinafter employee or in the first person.
 WHEREAS, the parties hereto recognize that the employer's business is a service-related business based upon maintaining its customers, and that the employee has sought employment by the employer by reason of the employer's established and developing clients as well as by reason of the employer's facilities, salon image and reputation.
 NOW THEREFORE, in consideration of employment, the employee agrees as follows:
 1. Without the express written authorization of V. CT Page 10257 Farricielli's, I will not while employed by V. Farricielli's or subsequent to such employment, disclose to anyone outside the employment of V. Farricielli's or in any way make use of any confidential information pertaining to V. Farricielli's activities of salon business. Such confidential information includes, but is not limited to, client lists, client prospect material, price lists, rate structures, client service records, and salon appointment books.
 2. Upon leaving the employment of V. Farricielli's I will not, without the express written authorization of V. Farricielli's, take with me in any form the original or any copy of any confidential information as defined under paragraph (1) above, I will promptly deliver to the V. Farricielli's all of such material held by me.
 3. I will during the period of my employment by the V. Farricielli's devote my full time and best efforts to the employer's business and will not without the express written permission of the employer engage in any business or activity similar or in competition with that of the employer nor will I work for or directly or indirectly assist my competition of the employer.
 4. Upon termination of my employment for any reason whatsoever, and regardless of any claims the either party may have against the other, I agree that for a period of twelve (12) months thereafter I will not in the city of Hamden, Conn. or within 10 miles of such city engage, either directly or indirectly, in or in competition with the business or activity carried on by V. Farricielli's during my tenure with V. Farricielli's.
 5. I further agree that for a period of twelve (12) months following the termination for any reason of my employment with V. Farricielli's, and regardless of any claims that either party may have against the other, I will not, directly or indirectly, render any series [service] to or solicit business from any person or entity (regardless of where located) to whom I and/or the employees of V. Farricielli's rendered services or solicited the business of during my tenure with V. Farricielli's.
 6. I further agree that I shall not during my employment with V. Farricielli's and for a period of twelve CT Page 10258 (12) months following the termination for any reason of my employment with V. Farricielli's, and regardless of any claims that either party may have against the other, directly or indirectly, employ or seek to employ any person who is employed by V. Farricielli's, nor shall I induce any such person to leave his employment with V. Farricielli's.
 IV
Time and geographic restrictions in a covenant not to compete are valid if they are reasonably limited and fairly protect the interests of both parties. Scott v. General Iron Welding Co.,171 Conn. 132 (1976). Scott provides certain guidelines to be used by a court in making the determination of reasonableness.
1. The length of time the restriction operates;
2. The geographical area covered;
3. Fairness of protection accorded to the employer;
 4. The extent of the restraint on employer's opportunity to pursue his occupation;
5. The extent of interference with the public's interest.
Scott v. General Iron Welding Co., supra., p. 137.
The court concludes that the covenant is not unreasonable as to length of time (twelve months) or geographic area (Hamden or within ten miles thereof). The covenant imposes only a slight restraint on employee's opportunity to pursue his occupation as a hairstylist. The plaintiff resides in Branford; he is free to work there or in any other area of Connecticut which is outside the ten-mile perimeter from Hamden. The court can perceive no interference with the public's interest if the covenants are found enforceable. Hairstylists are found on every corner of every town in Connecticut, creating a wide-open market. In this particular case, the salon "Appearances" which is located diagonally across the street from the plaintiff, existed prior to the date of the execution of defendant's restrictive covenant, and it does not appear likely that the fact that the defendant will be unable to continue working there if the injunction is granted will have any effect upon the overall requirements of the public, or the operation of the business. Finally, the court CT Page 10259 finds that the covenant is a reasonable attempt on the employer's part to protect its interest in existing customers from one who has become familiar with them and their requirements through his employment. The defendant became employed by the plaintiff in 1987, and at the time of his termination, serviced several hundred customers, approximately 40 to 45 customers per week and had access to plaintiff's files, computers and records. In June of 1997, the defendant voluntarily terminated his employment with plaintiff. Shortly thereafter, the defendant went to work in a salon diagonally across the street from plaintiff's place of business. This business is operated by Sheila Lendaro, a former employee of the plaintiff, who voluntarily terminated her employment with the plaintiff at about the same time as the defendant. Ms. Lendaro never signed a noncompete covenant with the plaintiff.
Defendant loaned money to Ms. Lendaro to buy an existing salon, "Appearances", located diagonally across the street from plaintiff, and is a vice-president of Appearances. Defendant's gross billings were approximately $75,000 annually while employed by the plaintiff. Since leaving plaintiff's employment, defendant has directly or indirectly solicited at least twenty-five former clients of the plaintiff. "Appearances" uses the same program as plaintiff's computer and the same type of computer. The gross revenue of plaintiff for the months of July and August 1997, declined when contrasted with the gross revenue for July and August of 1996. These findings compel the court to find that the defendant is in violation of his agreement with plaintiff.
 V
The defendant contends that the Salon Employment Agreement lacks consideration. Defendant signed the "Salon Employment Agreement" voluntarily on June 24, 1994, at a time when he was an employee at will. At that time he earned an hourly rate plus certain fringe benefits and a restricted commission. Subsequently, on April 8, 1995, defendant and plaintiff signed a payment and benefits agreement (Exh. F) which reduced his hourly rate and certain fringe benefits in exchange for an enhanced commission. At the execution of this agreement and at all times before and after its execution, the plaintiff was an employee at will. The agreement (Exh. F) rendered null and void any and all previous payment and benefits agreements. It did not mention the "Salon Employment Agreement" (Plaintiff's Exh. B) which is not a payment and benefits agreement in any way, shape or form. The CT Page 10260 court therefore finds that the payment and benefits agreement (Plaintiff's Exh. F) did not render null and void the Salon Employment Agreement (Plaintiff's Exh. B) dated June 24, 1994. The defendant was an existing at will employee when he signed the Salon Employment Agreement. The agreement extended his employment indefinitely. Similar situations have not been deemed invalid as based on past consideration. Van Dyck Printing v. DiNicola,43 Conn. Sup. 191 (1993) aff'd 231 Conn. 272 (1994). Roessler v.Burwell, 119 Conn. 289 (1934); Torrington Creamery, Inc. v.Davenport, 126 Conn. 515 (1940). The language of Roessler is particularly apt. "The underlying purpose of the defendant in entering the agreement [the Salon Employment Agreement] was to continue thereafter in the employment of plaintiff . . . The benefit offered him was continuance in return for which the plaintiff was to receive his service and the benefit of the restrictive covenants in the agreement." Roessler v. Burwell,
supra, p. 293. Accordingly, the court finds that the Salon Enforcement Agreement is supported by sufficient and valid consideration. After weighing the evidence submitted at the hearing, the court concludes that there is a strong likelihood that plaintiff will prevail on the merits of this cause at the time of the final hearing; that unless a temporary injunction is issued by this court, a substantial and irreparable injury for which the law will provide no adequate remedy caused by defendant's breach of the covenant will be sustained by plaintiff. Clinical Laboratories v. Connecticut Blue Cross,
31 Conn. Sup.
The court has reviewed the proposed temporary injunction dated July 29, submitted by the plaintiff, together with the bond which is required in conjunction with such an application. The court is satisfied that it is appropriate for it to sign this injunction and cause it to be served by personal service upon the defendant, David Campanelli, and to be effective after such service and return.
Dorsey, J. Judge Trial Referee
RETURN DATE: AUGUST 26, 1997 DOCKET NO. : SUPERIOR COURT R C LIVOLSI, INC. : J.D. OF NEW HAVEN SUPERIOR COURT : AT MERIDEN vs. : JULY 29, 1997 DAVID CAMPANELLI CT Page 10261
TEMPORARY INJUNCTION
The Plaintiff's verified complaint and application for a temporary injunction having come before this Court pursuant to an order to show cause why a temporary injunction should not issue as prayed for and the parties appeared and were fully heard, and it appearing to the Court that a temporary injunction ought to issue, and the plaintiff having given a bond to the opposite party with surety satisfactory to the Court to answer all damages in case the plaintiff shall fail to prosecute the action to effect.
These are therefore, by authority of the State of Connecticut to command and enjoin you, DAVID CAMPANELLI, to absolutely desist and refrain, from soliciting for or engaging in any hair salon business in Hamden, Connecticut, or within ten miles thereof, temporarily until final hearing, or for twelve months from the date hereof; until the claims set forth in this action are fully resolved, until the return day of the writ and complaint and until further order of the Court.
Dated at Meriden, Connecticut this 8 day of October 1997.
BY THE COURT Dorsey Judge/Clerk