******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

SCHIMENTI CONSTRUCTION COMPANY, LLC
*v.* JOSEPH SCHIMENTI
(AC 44274)

Bright, C. J., and Cradle and Seeley, Js.

*Syllabus*

The plaintiff construction management firm sought to recover damages from the defendant, a former employee, for, inter alia, breach of contract and breach of the covenant of good faith and fair dealing. The plaintiff hired the defendant in 1998. In 2014, the defendant was promoted and, in connection therewith, received and signed a promotion letter, which confirmed his promotion, described the responsibilities, compensation and benefits of his new position, stated that he remained an at-will employee, and provided that he was required to execute a nondisclosure agreement as a condition of his continued employment. The nondisclosure agreement, which the defendant also signed, included a provision that prohibited him from competing with the plaintiff's business for the duration of his employment and for two years following the termination of his employment. In 2018, the defendant resigned from his employment with the plaintiff and accepted a position with a competitor construction company. Thereafter, the plaintiff commenced this action, claiming that the defendant had breached the nondisclosure agreement. The defendant filed a motion for summary judgment as to two counts of the plaintiff's complaint, claiming that the restrictive covenants set forth in the nondisclosure agreement were unenforceable because the agreement lacked consideration. The trial court granted the defendant's motion, determining that the nondisclosure agreement was unenforceable for a lack of consideration, and it denied the plaintiff's motion for a determination in favor of an immediate appeal. Thereafter, the plaintiff withdrew the remaining counts of its complaint, and it appealed to this court. *Held* that the trial court erred in granting the defendant's motion for summary judgment as there was at least a genuine issue of material fact as to whether the defendant's continued employment constituted sufficient consideration for the nondisclosure agreement: pursuant to *Roessler* v. *Burwell* (119 Conn. 289), which was binding precedent, the continued employment of an at-will employee could constitute sufficient consideration for the execution of a restrictive covenant, and the Superior Court decisions that have held to the contrary since that decision either failed to consider *Roessler* or distinguished it on the basis of circumstances that were inapplicable to the present case; moreover, the evidence before the trial court, when viewed in the light most favorable to the plaintiff, showed that, by signing the nondisclosure agreement, the plaintiff received the benefit of the defendant's services and the benefit of the restrictive covenant and the defendant received the benefit of continued employment, as the defendant was an at-will employee who could be terminated at the plaintiff's discretion, the promotion letter explicitly stated that the execution of the nondisclosure agreement was a condition of the defendant's continued employment, and the defendant continued his employment with the plaintiff for four years after executing the nondisclosure agreement before he voluntarily resigned; furthermore, the trial court's reliance on *Thoma* v. *Oxford Performance Materials, Inc.* (153 Conn. App. 50), in granting the defendant's motion for summary judgment, was misplaced because the holding in *Thoma* that continued employment was insufficient consideration for a restrictive covenant was limited to the facts of that case and was not inconsistent with, nor did it undermine, the reasoning of *Roessler*, as the court in *Thoma* did not conclude or suggest that continued employment could not constitute adequate consideration for a restrictive covenant.

Argued May 10, 2022—officially released January 17, 2023

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior

Court in the judicial district of Danbury and transferred to the judicial district of Hartford, Complex Litigation Docket, where the court, *Moukawsher, J.*, granted the defendant's motion for summary judgment with respect to certain counts of the complaint; thereafter, the court, *Moukawsher, J.*, denied the plaintiff's motion for a written determination in favor of an immediate appeal; subsequently, the plaintiff withdrew the remaining counts of the complaint; judgment for the defendant, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Robert M. Barrack*, with whom, on the brief, was *Peter E. Strniste, Jr.*, for the appellant (plaintiff).

*Lori B. Alexander*, with whom, on the brief, was *Stephen P. Rosenberg*, for the appellee (defendant).

*Opinion*

SEELEY, J. The plaintiff, Schimenti Construction Company, LLC, appeals from the summary judgment rendered by the trial court in favor of the defendant, Joseph Schimenti, on counts one and two of its complaint alleging breach of an employment contract and breach of the covenant of good faith and fair dealing. On appeal, the plaintiff claims that the court erred in determining that continued employment of an at-will employee[1] does not constitute consideration for a restrictive covenant.[2] We agree with plaintiff's claim and, therefore, reverse the summary judgment rendered in favor of the defendant and remand the case for further proceedings.

The following facts and procedural history, viewed in the light most favorable to the plaintiff, as the nonmoving party, are relevant to our resolution of this appeal. See, e.g., *DAB Three, LLC* v. *Fitzpatrick*, 215 Conn. App. 835, 837, 283 A.3d 1048 (2022). The plaintiff, a construction management firm organized and existing under the laws of the state of New York, with its headquarters located in Ridgefield, Connecticut, employs more than 200 employees. The president and sole owner of the plaintiff is Matthew Schimenti (Matthew), the cousin of the defendant.[3] The plaintiff employed the defendant beginning in 1998. On various dates in 2013, the defendant informed Matthew that he "wanted more responsibility and to be involved in the strategic growth of [the plaintiff] and the overall management" and indicated that his ultimate goal included obtaining an ownership interest in the plaintiff. Matthew responded that he would consider creating a new position that included additional responsibilities and increased compensation for the defendant but noted that providing him with an ownership interest "was not possible at that time . . . ." At the beginning of 2014, the defendant held the title of project executive[4] and received a salary of $165,000 per year. At some point in January or February, 2014, the defendant was promoted to managing director.[5]

On February 25, 2014, Matthew presented the defendant with two documents, a promotion letter and a nondisclosure agreement.[6] The promotion letter, dated February 25, 2014, confirmed the defendant's promotion to managing director, effective February 1, 2014. This promotion letter described, inter alia, the responsibilities, compensation, and benefits of the new position. It stated that the defendant's initial base salary as managing director would start at $165,000 per year and that, effective August 1, 2014, it would increase to $185,000 per year, provided that he achieved performance objectives and was actively employed with the plaintiff. The promotion letter further stated that the defendant's salary was subject to an annual review, benchmarked on relevant industry data, and was subject to adjustment

based on an appraisal of the defendant's work performance and the finances of the plaintiff. It also detailed additional benefits that the defendant would be eligible for, including fringe benefit plans and an incentive program.

The promotion letter further provided in relevant part: "This letter will outline the terms and conditions of [the defendant's] employment with the [plaintiff]. *It does not create an employment contract between the [plaintiff] and [the defendant]. [The defendant] shall at all times be an employee at will of the [plaintiff]*, and both [the defendant] and the [plaintiff] may terminate [the defendant's] employment at any time for any reason, with or without cause . . . . Nothing contained in this offer constitutes a promise of employment for any particular duration or [the defendant's] receipt of compensation or benefits of any level for any particular duration." (Emphasis added.) The promotion letter specifically stated: "As a condition of your continued employment by the [plaintiff], you must execute a Non-Disclosure, Assignment of Developments & Non-Solicitation Agreement ([nondisclosure agreement])," which the promotion letter indicated was attached to it. The nondisclosure agreement provided in relevant part: "In consideration and as a condition of my employment by [the plaintiff] . . . the [defendant] hereby agrees with the [plaintiff] as follows . . . ." Section one of the nondisclosure agreement was titled "Confidentiality of Information; Developments," section two was titled "Covenant Not to Compete/Solicit," and section three was titled "Miscellaneous." Section two prohibited the defendant from competing with the plaintiff's business for the duration of his employment and for two years after the termination of his employment.[7] In section three, the nondisclosure agreement provided in relevant part that "[t]he [defendant] acknowledges and agrees that [he] is an 'employee-at-will' and this [a]greement does not create any obligation on the [plaintiff] or any other person or entity to continue the [defendant's] employment or to exploit any [d]evelopments."

The promotion letter directed the defendant to sign and date both the promotion letter and the nondisclosure agreement. It also stated these two documents contained "the entire understanding" of the defendant's employment by the plaintiff. The defendant signed the nondisclosure agreement on February 28, 2014, and the promotion letter on March 17, 2014.

Approximately four years later, in March, 2018, the defendant resigned from his employment with the plaintiff and accepted a position at JRM Construction Management, a construction company in New York City. The plaintiff commenced this action on June 25, 2018, claiming that the defendant had breached the nondisclosure agreement. The plaintiff sought both monetary damages and injunctive relief. Thereafter, the plaintiff

filed an amended complaint (operative complaint) that contained seven counts.[8] Only counts one and two of the operative complaint, in which the plaintiff alleged claims of breach of contract and breach of the covenant of good faith and fair dealing, respectively, are relevant to this appeal. On March 12, 2019, the defendant filed a revised answer and special defenses, including that (1) the covenant not to compete in the nondisclosure agreement was unreasonable and, thus, unenforceable, (2) the covenant not to compete was unenforceable due to the lack of consideration, (3) the covenant not to compete was unenforceable due to the plaintiff's anticipatory breach, and (4) the plaintiff failed to mitigate its alleged damages and harm.

On September 20, 2019, the defendant filed a motion for summary judgment as to counts one and two of the plaintiff's operative complaint. The defendant claimed, inter alia, that the restrictive covenants set forth in the nondisclosure agreement were unenforceable because the nondisclosure agreement lacked consideration.[9] Specifically, he claimed that "the only item of value that [the defendant] arguably received for his [signing of the nondisclosure agreement] was his continued employment by [the plaintiff]" and that, "[b]ecause in this case there was no consideration for the [nondisclosure agreement] beyond [the defendant's] continued employment, the [nondisclosure agreement] is unenforceable as a matter of law."

On October 25, 2019, the plaintiff filed a memorandum of law in opposition to the defendant's motion for summary judgment. In addressing the defendant's claim of lack of consideration, the plaintiff argued that the promotion letter provided that the defendant's elevation to managing director became "effective February 1, 2014, that as part of that promotion he would be entitled to a raise to $185,000 per year (a $20,000 raise) effective August 1, 2014, and that as a condition of his continued employment in his new position he would sign the [nondisclosure agreement]." The plaintiff identified the promotion, additional employment responsibilities, and the promise of the $20,000 raise as consideration for the nondisclosure agreement. Finally, the plaintiff noted that Matthew " 'would have never promoted [the defendant] to managing director and provided him with increased compensation unless he signed [the nondisclosure agreement].' "

On December 11, 2019, the court issued its memorandum of decision granting the defendant's motion for summary judgment with respect to counts one and two of the operative complaint. At the outset, the court determined that both the promotion letter and the nondisclosure agreement were unenforceable due to a lack of consideration. It then stated that, pursuant to its interpretation of this court's decision in *Thoma* v. *Oxford Performance Materials, Inc.*, 153 Conn. App.

50, 100 A.3d 917 (2014), "a party giving nothing more than the status quo of continuing employment—neither offering a benefit nor accepting a harm—offers no consideration to exchange for his promise and the promise is, therefore, unenforceable." In the court's view, the restrictions placed on the defendant in the nondisclosure agreement were exchanged for the defendant's continued employment, which it concluded did not constitute consideration as a matter of law.

The court further explained that the language of the promotion letter specifically stated that it did not create an employment contract and that the defendant remained an at-will employee. Additionally, in the court's view, the promotion letter provided only the possibility of future raises, bonuses, and salary reviews based on industry benchmarks. The court reasoned that the nondisclosure agreement also granted the defendant nothing in exchange for his promises to keep the plaintiff's confidences.

On December 27, 2019, the plaintiff filed a motion for determination in favor of an immediate appeal, pursuant to Practice Book § 61-4,[10] in which it alleged that the court's grant of summary judgment as to counts one and two of the operative complaint "presents issues of such significance to the determination of the final outcome of the case that it warrants immediate review . . . ." The court denied the plaintiff's motion on February 19, 2020. Thereafter, on September 1, 2020, the plaintiff withdrew the remaining counts of the operative complaint. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the plaintiff claims that the court erred in concluding that continued employment of an at-will employee does not constitute consideration for the execution of a restrictive covenant. Specifically, the plaintiff argues that the court's conclusion runs counter to binding authority holding that continued employment constitutes consideration for the execution of a restrictive covenant by an at-will employee. We agree.

The general principles governing a trial court's decision on a motion for summary judgment are well established. "On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [defendant] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion

for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . A material fact is a fact that will make a difference in the outcome of the case. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.) *Bank of New York Mellon* v. *Madison*, 203 Conn. App. 8, 20–21, 247 A.3d 210 (2021).

"In deciding a motion for summary judgment, [i]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) *Doe* v. *West Hartford*, 168 Conn. App. 354, 375, 147 A.3d 1083 (2016), aff'd, 328 Conn. 172, 177 A.3d 1128 (2018).

Next, we set forth the general legal principles necessary for the resolution of the plaintiff's appeal, which require us to determine whether the nondisclosure agreement could constitute an enforceable contract. To be enforceable, a contract must be supported by consideration. *Tedesco* v. *Agolli*, 182 Conn. App. 291, 303–304, 189 A.3d 672, cert. denied, 330 Conn. 905, 192 A.3d 427 (2018). "The doctrine of consideration is fundamental in the law of contracts, the general rule being that in the absence of consideration an executory promise is unenforceable. . . . Put another way, [u]nder the law of contract, a promise is generally not enforceable unless it is supported by consideration. . . . [C]onsideration is [t]hat which is bargained-for by the promisor and given in exchange for the promise by the promisee . . . . We also note that [t]he doctrine of consideration does not require or imply an equal exchange between the contracting parties. . . . Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." (Internal quotation marks omitted.) *Kinity* v. *US Bancorp*, 212 Conn. App. 791, 829, 277 A.3d 200 (2022); see also *Willamette Management Associates, Inc.* v. *Palczynski*, 134 Conn. App. 58, 70, 38 A.3d 1212 (2012). Whether a particular set of facts constitutes consideration is a question of law subject to plenary review. *Kinity* v. *US Bancorp*, supra, 830.[11] Guided by these general principles, we next turn to the case law regarding the issue of whether continued employment can constitute sufficient consideration to support a restrictive covenant.

We begin our analysis with our Supreme Court's decision in *Roessler* v. *Burwell*, 119 Conn. 289, 176 A. 126 (1934).[12] In *Roessler*, the plaintiff was engaged in the business of manufacturing delicatessen products and selling them to retail stores in New Haven county. Id., 290. In 1926, the defendant began working for the plaintiff as a salesman for a weekly salary without a written agreement. Id. On October 10, 1929, the parties entered into a written employment agreement. Id. The agreement provided that the plaintiff agreed to employ the defendant as a salesman "indefinitely," that the defendant would be compensated "by such weekly wages as may be mutually agreed upon between the parties from time to time," and that, "in the event the [plaintiff] should discharge or discontinue the services of the [defendant] for any cause whatsoever, the [defendant] would not for a period of one year after severing his connection with the [plaintiff], call upon, or directly or indirectly, in any capacity, solicit the same business from, any of the customers of the [plaintiff] in the locality specified . . . ." (Internal quotation marks omitted.) Id., 290–91.[13] During his employment, the defendant was paid and accepted different amounts as weekly wages. Id., 291.

In January, 1934, the defendant voluntarily left his employment with the plaintiff and began to solicit orders from the plaintiff's customers for products similar to those sold by the plaintiff. Id., 291–92. The defendant claimed that he was not bound by the solicitation restriction in his agreement with the plaintiff. Id., 292. The plaintiff brought an action against the defendant in which it sought an injunction "restraining the defendant from solicitating, canvassing or interfering in any way with the plaintiff's customers." Id. The trial court rendered judgment in favor of the plaintiff, "restraining the defendant from directly or indirectly calling upon, soliciting, diverting, or attempting to solicit, divert, or take away certain customers of the plaintiff . . . ." Id. The defendant appealed, claiming that the written agreement "was so vague and uncertain in its terms as not to constitute a contract, and, therefore, furnished no basis for the injunctive relief sought." Id.

Our Supreme Court affirmed the judgment of the trial court. Id., 295. It determined that, although the parties did not appear to have mutually agreed on the salary that was to be paid to the defendant, "the actual payment of various sums to him from time to time and his acceptance thereof without objection, constitute[d] an implied agreement that they were the amounts properly due [to] him under the terms of the agreement. The underlying purpose of the defendant in entering into the agreement was to continue thereafter in the employment of the plaintiff at a mutually agreeable salary; the benefit offered him was such a continuance, in return for which the plaintiff was to receive his services and

the benefit of the restrictive covenant in the agreement. The defendant received the benefit he sought in that he was continued in the employment more than four years after the agreement was made, until he voluntarily left it. In such a situation . . . [t]hough there be not mutual promises, yet if, before he calls for the fulfillment of the promise, the promissee do perform that, in consideration of his doing which the promise is made, *there is consideration for the agreement, and it can be enforced. . . .* The plaintiff, having paid the defendant a weekly salary satisfactory to him, from the time when the agreement was made, and having continued the defendant in his employment until he voluntarily left, has given to the defendant the benefit for which he bargained, and has, by performance, made certain that which before was uncertain; the restrictive covenant is in itself sufficiently definite; and after the withdrawal of the defendant from the plaintiff's employment, it was founded upon an adequate consideration given." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 292–94. Our Supreme Court agreed with the trial court's conclusion that consideration, namely, continued employment, existed to support the nonsolicitation restriction in the written agreement. Id., 293–94.

In *Torrington Creamery, Inc.* v. *Davenport*, 126 Conn. 515, 520, 12 A.2d 780 (1940), our Supreme Court determined that a restrictive covenant was not "lacking in mutuality" even though the employer could discharge the employee at any time. In that case, the plaintiff employer, The Sunny Valley Corporation, and the defendant employee had a conversation, shortly after March 1, 1938, regarding the possible termination of the defendant's employment, and "the defendant suggested that he had certain plans for the improvement of the business and asked if he could attempt, for a period of five or six months, to carry these plans into effect as a full time manager." Id., 517. On April 15, 1938, the parties entered into a contract whereby the defendant would be employed at a fixed compensation with no specific term of employment. Id., 517–18. The contract included a restrictive covenant prohibiting the defendant from competing with the plaintiff's business for two years after termination of employment. Id., 518.

In October, 1938, the plaintiff sold its business to The Torrington Creamery, and the new owner terminated the defendant's employment. Id., 518–19. Thereafter, the defendant began a business in competition with The Torrington Creamery, which sought to enforce the restrictive covenant executed by the defendant. Id., 519. In upholding the restrictive covenant, the court stated: "While, under the contract, [the plaintiff] could discharge the defendant at any time, this did not make the contract one lacking in mutuality as regards the enforcement of the covenant in question and the [plaintiff] was under no obligation as a condition to enforcing

it to offer to continue him in its employ. *Roessler* v. *Burwell*, [supra, 119 Conn. 293]." *Torrington Creamery, Inc.* v. *Davenport*, supra, 126 Conn. 520.

Decisions from the Superior Court similarly have concluded that continued employment of an at-will employee provides the necessary consideration for a restrictive covenant. In *RKR Dance Studios, Inc.* v. *Makowski*, Superior Court, judicial district of Hartford, Docket No. CV-08-4035468 (September 12, 2008) (46 Conn. L. Rptr. 389, 389), the plaintiff employers sought injunctive relief against the named defendant, a dance instructor. In the application for a preliminary injunction, the plaintiffs alleged that the defendant had commenced her employment as an at-will employee on November 29, 2001, and had executed a noncompete agreement at that time. Id. On approximately May 5, 2006, the parties executed a new, more restrictive noncompete agreement. Id. The defendant left her employment with the plaintiffs on September 28, 2007, and, shortly thereafter, began working for a different dance studio. Id.

In response to the plaintiffs' application for a preliminary injunction, the defendant argued that the 2006 noncompete agreement failed due to lack of consideration. Id., 390. The evidence revealed that any employee who did not sign the 2006 noncompete agreement would be terminated, and, therefore, "[t]he issue before the court . . . is whether . . . [the defendant's] continued employment as an at-will employee obviates the need for overt consideration to support the [2006] noncompete agreement." Id. After setting forth the general principles regarding consideration, the court observed that it was bound by our Supreme Court's decision in *Roessler* v. *Burwell*, supra, 119 Conn. 289. *RKR Dance Studios, Inc.* v. *Makowski*, supra, 46 Conn. L. Rptr. 390. Specifically, it relied on the principle that an employee's continued employment may form the necessary consideration for a covenant not to compete signed after the start of employment, at least where the employee would be discharged, or where he or she actually remained in the plaintiff's employment for a substantial time after the execution of the noncompete agreement. Id., 390–91. To further support its conclusion, the court, inter alia, cited to other decisions from the Superior Court.[14] Id., 391. Ultimately, it concluded that, "[i]n light of what this court considers the binding precedent of *Roessler* . . . this court finds adequate consideration to support the 2006 noncompete covenant, given that the defendant was . . . an at-will employee and then voluntarily left [her employment] one year and one half after the agreement was executed." Id., 392; see also *Classic Homemakers, LLC* v. *Coolidge*, Superior Court, judicial district of Windham, Docket No. CV-15-6009733-S (July 28, 2017) (65 Conn. L. Rptr. 6, 7) ("Connecticut law does not preclude continued employment standing alone from being deemed adequate consideration to sustain a covenant not to compete, at least when an

affected employee leaves that employment voluntarily").[15]

The defendant points to decisions of the Superior Court that have concluded that continuing employment cannot constitute consideration for a restrictive covenant for an at-will employee.[16] We agree with the plaintiff, however, that "most of the [Superior Court] decisions indicating [that] the continued employment of an at-will employee does not constitute consideration for a restrictive covenant fail to consider *Roessler* [v. *Burwell*, supra, 119 Conn. 289]. Those that do consider *Roessler* distinguish it based on circumstances inapplicable to the present case . . . ." See *Fairfield County Bank Ins. Services, LLC* v. *Welsch*, Superior Court, judicial district of Danbury, Docket No. CV-19-6033568-S (March 11, 2020) (concluding that continued employment is inadequate consideration for noncompete agreement and distinguishing line of cases following *Roessler* in which continued employment constitutes consideration for restrictive covenants on grounds that, in many of those cases, employee was at will and left employment voluntarily); *J.M. Layton & Co.* v. *Millar*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-04-0084446-S (August 9, 2004) (37 Conn. L. Rptr. 649, 651) (The trial court did not address *Roessler* but stated that "[i]t is well settled law in Connecticut . . . that continued employment is not consideration for a covenant not to compete entered into after the beginning of the employment. . . . In the context of either non-compete or non-solicit agreements, continued employment is an inadequate consideration to support such contracts." (Citation omitted; internal quotation marks omitted.)); *Hoffnagle* v. *Henderson*, Superior Court, judicial district of Hartford, Docket No. CV-02-0813972 (April 17, 2003) (court stated that "[i]t is well established that continued employment, as opposed to new employment, is not adequate consideration" to support noncompete agreement but did not address *Roessler*); *Cost Management Incentives, Inc.* v. *London-Osborne*, Superior Court, judicial district of New Haven, Docket No. CV-02-0463081 (December 5, 2002) (concluding that continued employment was not sufficient consideration for restrictive covenants and distinguishing *Roessler* by reasoning that, in present case, "neither of the defendants voluntarily left their employment," and, "[t]herefore, it is the plaintiff itself which has broken the bargain, or, withdrawn the consideration it cites for the agreements").

Some Superior Court cases have cited *Van Dyck Printing Co.* v. *DiNicola*, 43 Conn. Supp. 191, 648 A.2d 898 (1993), aff'd, 231 Conn. 272, 648 A.2d 877 (1994) (*Van Dyck*), or *Dick* v. *Dick*, 167 Conn. 210, 355 A.2d 110 (1974), to support the proposition that continued employment is inadequate consideration for a restrictive covenant. Both cases are distinguishable from the present case, and, therefore, we are not persuaded by

the reasoning of the Superior Court decisions that relied on these cases. In *Van Dyck*, the plaintiff employer brought an action against the defendant employee for breach of a covenant not to compete after the defendant's employment was terminated. *Van Dyck Printing Co.* v. *DiNicola*, supra, 191. The defendant claimed, inter alia, that the agreement not to compete was unenforceable because he signed it after starting employment and "an employee who has already commenced employment and receives no additional consideration for signing a covenant not to compete is not subject to enforcement of the covenant because past consideration cannot support the imposition of a new obligation. *Dick* v. *Dick* [supra, 224]." *Van Dyck Printing Co.* v. *DiNicola*, supra, 195. The court explained that "[t]his general proposition is not, however, applicable to the situation presented" because when the defendant began working for the plaintiff, there was no completed employment contract in place. Id., 195–96. At the start of the defendant's employment, the agreement contained neither the defendant's precise compensation rate nor the nature of the " 'protection' " obtained by the plaintiff for entrusting the sales role to the defendant. Id., 196. The court ultimately concluded that there existed sufficient consideration to support the restrictive covenant. Id.

Our Supreme Court in *Dick* v. *Dick*, supra, 167 Conn. 223–24, applied New York law to determine whether a contract made between the parties was supported by consideration. In dicta, the court stated: "[I]t is obvious that, if the contract were to be governed by Connecticut law, it would not be valid in that the consideration is past consideration which will not support a promise." (Internal quotation marks omitted.) Id., 224. Notably, that case did not involve at-will employment or a determination as to whether continued employment constituted consideration. Rather, the claimed consideration was a sum of money alleged to have been paid to the defendant in addition to the plaintiff's forbearance from suing the defendant. Id., 223. *Dick*, therefore, is inapplicable to the facts and circumstances of the present case.

We conclude that *Roessler* is applicable to the facts and circumstances of the present case. Its holding that consideration in the form of continued employment for at-will employees can be sufficient to make enforceable a restrictive covenant agreed to by the parties at some point after the commencement of employment remains binding precedent. Further, the facts of the present case are similar to those found in *Roessler*. The parties do not dispute that the defendant was an at-will employee both before and after signing the nondisclosure agreement and that he voluntarily left the employ of the plaintiff and joined a competitor approximately four years after signing the nondisclosure agreement and the promotion letter. Because he was an at-will employee, the defendant's employment could be termi-

nated at the plaintiff's discretion, and, therefore, the defendant's continued employment could constitute consideration for the promotion letter and the nondisclosure agreement. Furthermore, the promotion letter explicitly stated that the defendant's execution of the nondisclosure agreement was "a condition of [his] continued employment by the [plaintiff] . . . ." Thus, the evidence before the trial court, viewed in the light most favorable to the plaintiff, showed that, by signing the nondisclosure agreement, the plaintiff received the benefit of the defendant's services and the benefit of the restrictive covenant and the defendant received the benefit of continued employment. See *Roessler* v. *Burwell*, supra, 119 Conn. 293. Because *Roessler* applies, as an intermediate appellate court, we are bound by controlling precedent from our Supreme Court. See *State* v. *Madera*, 160 Conn. App. 851, 861–62, 125 A.3d 1071 (2015). We conclude, therefore, that there is at least a genuine issue of material fact that the defendant's continued employment alone was sufficient consideration to support the nondisclosure agreement.

Additionally, we disagree with the trial court's reliance on this court's decision in *Thoma* v. *Oxford Performance Materials, Inc.*, supra, 153 Conn. App. 50, to support its determination that continued employment of an at-will employee cannot, as a matter of law, constitute consideration for a restrictive covenant signed after the starting date of employment. In *Thoma*, the plaintiff employee was hired in February, 2003, by the defendant, a manufacturer of high performance polymers. Id., 52. In May or June, 2006, the defendant pursued new financing, and one investor requested that certain employees execute employment contracts to ensure continuity. Id. As a result, the plaintiff entered into an employment agreement with the defendant on June 12, 2006. Id. The agreement set forth the plaintiff's annual salary and benefits, created a twenty-four month employment period, subject to an automatic renewal for additional twelve month terms, provided that the defendant could terminate her employment without cause with sixty days notice, and, in the event of such termination, the defendant was required to pay the plaintiff all accrued and unpaid compensation, plus her base salary for a period of time. Id. Finally, the plaintiff was prohibited from seeking employment with a competitor of the defendant during her employment with the defendant and for six months after her employment had ended. Id., 52–53.

A second employment agreement, executed on June 20, 2006, altered the terms of the first agreement, so as to render the plaintiff an at-will employee, and eliminated the defendant's posttermination compensation obligation. Id., 53–54. The defendant terminated the plaintiff's employment on November 20, 2007. Id., 54. The plaintiff then commenced an action sounding in breach of contract and fraud. Id. The trial court deter-

mined that the first agreement was valid and supported by consideration but that the second agreement lacked consideration, and, therefore, the terms of the first agreement applied. Id., 54–55.

On appeal, the defendant contended that the court improperly had concluded that the second agreement was not supported by consideration. Id., 55. Specifically, it claimed, inter alia, that the elimination of the plaintiff's six month noncompete clause and her increased chance for continued employment served as consideration to support the second agreement. Id. In rejecting the defendant's first claim, this court noted that the trial court had concluded that it was ambiguous whether the noncompetition clause in the second agreement continued indefinitely or ended at the time of the termination of the plaintiff's employment. Id., 57. "Here, § 1.1 [of the second agreement] provided an indefinite noncompetition duration and specifically cross-referenced § 1.2 [of the second agreement], which provided a time frame limited to the plaintiff's employment. . . . Therefore, the language in each clause of the noncompetition restriction was not sufficiently clear for the court to reconcile them." (Citation omitted.) Id., 61. The trial court applied the rules of contract interpretation and determined that, in the second agreement, " 'the plaintiff lost her rights to termination pay and gained nothing in return.' " Id., 57. This court agreed with the analysis and determined that, under these facts and circumstances, the court properly found that the ambiguous noncompetition restriction, which still could restrict the plaintiff's postemployment activities, did not constitute consideration to support the second agreement. Id., 65.

The defendant next claimed that the court improperly had concluded that the plaintiff's improved chances for continued employment did not constitute consideration for the second agreement. The court reasoned: "The [second] agreement clearly interferes with the plaintiff's rights as promised in the [first] agreement in that *it eliminates the plaintiff's contractual right to collect termination compensation.* . . . [T]here must be valid and adequate consideration for the less advantageous terms of employment contained in the [second] agreement, other than continued employment of the plaintiff." (Emphasis added; internal quotation marks omitted.) Id. This court agreed that the facts supported the court's determination that the financing sought by the defendant was not dependent on the execution of the second employment agreement. Id., 66. "Consequently, the record supports the court's conclusion that the defendant's financing and the plaintiff's continued employment were not predicated on the second agreement's execution. *As a result, the court reasonably concluded that the plaintiff's continued employment, for which the first agreement already provided, did not constitute valid consideration to support the second*

*agreement.* See *Brian Construction & Development Co.* v. *Brighenti*, 176 Conn. 162, 166, 405 A.2d 72 (1978) (when a party agrees to perform an obligation for another to whom that obligation is already owed, although for lesser renumeration, the second agreement does not constitute a valid, binding contract)." (Emphasis added; footnote omitted; internal quotation marks omitted.) *Thoma* v. *Oxford Performance Materials, Inc.*, supra, 153 Conn. App. 66–67. Thus, this court's decision in *Thoma* was limited to the facts of that case, specifically to the court's findings after a trial that the second agreement eliminated the plaintiff's contractual right to severance pay and that the plaintiff's continued employment was not predicated on execution of the second agreement. See id. The court in no way concluded or even suggested that continued employment cannot, as a matter of law, constitute adequate consideration for a restrictive covenant. Consequently, the holding in *Thoma* is neither inconsistent with nor undermines the reasoning of *Roessler* v. *Burwell*, supra, 119 Conn. 289. Accordingly, we conclude that the trial court's reliance on *Thoma* in granting the defendant's motion for summary judgment was misplaced. This is especially true given that the plaintiff in the present case presented evidence that execution of the nondisclosure agreement was a condition of the defendant's continued employment, and the court was required to view that evidence in the light most favorable to the plaintiff when ruling on the defendant's motion.

On the basis of the evidence before the trial court and the procedural posture of the present case, and mindful of our Supreme Court's decision in *Roessler*, we conclude that there is at least a genuine issue of material fact as to whether the defendant's continued employment constituted consideration for the nondisclosure agreement. The plaintiff presented evidence in opposition to the defendant's motion for summary judgment that the defendant was an at-will employee both prior to and after being promoted to managing director and executing the nondisclosure agreement. Because he was an at-will employee, the defendant's employment could have been terminated by the plaintiff at any time, and, thus, the defendant's continued employment could constitute sufficient consideration to support the nondisclosure agreement. Additionally, the defendant voluntarily resigned from his employment with the plaintiff four years after executing the nondisclosure agreement. At trial, as the plaintiff did in *Thoma*, the defendant may present evidence that there was no connection between the nondisclosure agreement and his continued employment; but, if connected, continued employment can be sufficient consideration for a restrictive covenant. Accordingly, we conclude that the court erred in granting the defendant's motion for summary judgment on the basis that the nondisclosure agreement was unenforceable because, as a matter of

law, it lacked consideration.[17]

The judgment is reversed and the case is remanded with direction to deny the defendant's motion for summary judgment and for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

[1] As a general matter, at-will employment is terminable by either the employee or the employer and does not require cause. See, e.g., *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 697–98, 802 A.2d 731 (2002).

[2] The plaintiff also claims that the court improperly failed (1) to find that genuine issues of material fact exist as to whether the defendant's promotion and other benefits constituted consideration to support the restrictive covenant, and (2) to consider evidence extrinsic to the nondisclosure agreement and promotion letter at issue, which demonstrated that the defendant received a raise, bonuses and other valuable benefits in exchange for the restrictive covenant. As to the former, we agree with the plaintiff. See footnote 17 of this opinion. As to the latter, because of our conclusion that the court improperly rendered summary judgment in favor of the defendant, we need not address the plaintiff's claim.

[3] The plaintiff was formed in 1994 and specializes in building retail, commercial, entertainment, hospitality, corporate office space, banks, and other construction projects in the Northeast and in California.

[4] A project executive is responsible for overseeing a group of project managers and reports directly to Matthew.

[5] The position of managing director had not existed until the defendant's promotion in 2014. The responsibilities of this new position included "overseeing all of the [p]roject [e]xecutives, and executing the strategic direction of the [plaintiff]. [The defendant's] responsibilities would also include implementing and championing strategic initiatives."

[6] Although the defendant acknowledged receiving the nondisclosure agreement in late February, 2014, and the record reveals that he signed that document on February 28, 2014, he claimed that he was not provided with a copy of the promotion letter until approximately March 14, 2014, which he signed on March 17, 2014. As we previously have noted, we view the record in the light most favorable to the plaintiff, as the nonmoving party. See *DAB Three, LLC* v. *Fitzpatrick*, supra, 215 Conn. App. 837.

[7] Section two of the nondisclosure agreement provides: "A. For so long as the [defendant] is employed by the [plaintiff] and for a period of twenty-four (24) months after the termination of such employment for any reason whatsoever, the [defendant] shall not, directly or indirectly, through or on behalf of any other person or entity, whether individually or in conjunction with any other person, or as an employee, agent, consultant, representative, or holder of any interest in any other person or entity or in any other capacity whatsoever: (i) solicit or accept construction business from any Client (whether as a general contractor, construction manager, subcontractor or otherwise) or perform any of the services performed or provided by the [plaintiff] for any Client; (ii) solicit, recruit or hire any employee of the [plaintiff] to work for a third party other than the [plaintiff] or engage in any activity that would cause any employee to violate any agreement with the [plaintiff] (or do any of the foregoing with respect to any former employee of the [plaintiff] until twelve (12) months after the date such employee has otherwise ceased performing any services for the [plaintiff]); (iii) induce or influence, or seek to induce or influence, any Client or any other person or entity which has a business relationship with the [plaintiff] (each a 'Business Affiliate') to withdraw, terminate or curtail its relationship with the [plaintiff] or to use the services of any competitor of the [plaintiff]; and/or (iv) make any disparaging comment about the [plaintiff], or any of its officers, members or employees, to any present, past or prospective Business Affiliate of the [plaintiff].

"B. So long as the [defendant] is employed by the [plaintiff], the [defendant] will not undertake the planning or organization of any business activity competitive with the business of the [plaintiff]."

[8] The operative complaint alleged claims of breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, tortious interference with contractual relations with employees, tortious interference with business relations with clients and business contacts, unjust enrichment, and violation of the Connecticut Uniform Trade Secrets Act, General Statutes § 35-50 et seq.

[9] In his motion for summary judgment, the defendant also argued that (1) the restrictive covenants were unreasonably overbroad, and (2) the plaintiff materially breached the promotion letter. As to the former, the defendant argued that he was the only employee of the plaintiff required to enter into such an agreement. He further contended that the nondisclosure agreement was unreasonable as to the protection afforded to the plaintiff, the degree of restraint placed on the defendant's ability to pursue his occupation, and the scope of the nonsolicitation provision. See, e.g., *National Waste Associates, LLC* v. *Scharf*, 183 Conn. App. 734, 745–46, 194 A.3d 1 (2018) (setting forth five factor test to evaluate reasonableness of restrictive covenant). As to the latter, the defendant claimed that the plaintiff had materially breached the promotion letter by not reviewing the defendant's performance or salary and, as a result, that he was excused from performing any of his contractual obligations.

In its memorandum of decision, the court determined that genuine issues of material fact existed regarding the reasonableness of the defendant being the only employee required to sign a nondisclosure agreement, the terms that required the defendant to "stay away" from the plaintiff's clients and employees for a period of twenty-four months following the termination of the defendant's employment, and the confidentiality provisions. The court did not address, specifically, the defendant's claim of material breach by the plaintiff.

In his appellate brief, the defendant summarily claims that he "submitted evidence establishing that the restrictive covenants . . . are unenforceable, because they are unreasonable" and that "the record evidence establishes that the [nondisclosure] [a]greement is also unenforceable because [the plaintiff] materially breached its alleged promise . . . that [the defendant's] salary would be reviewed annually and benchmarked accordingly . . . ." (Internal quotation marks omitted.) He argues that this court should affirm the judgment on these alternative grounds. In its reply brief, the plaintiff contends, inter alia, that "these purported additional grounds for affirmance should not be considered because they are inadequately briefed . . . with no actual argument," have minimal citation to the record or to legal authority, and are devoid of any analysis. We agree that the cursory arguments advanced by the defendant as alternative grounds to affirm the summary judgment rendered by the trial court are briefed inadequately, and, therefore, we decline to consider them. See *Parnoff* v. *Stratford*, 216 Conn. App. 491, 506, A.3d (2022) (this court is not required to review issues that are improperly presented through inadequate brief and such issues are deemed abandoned).

[10] Practice Book § 61-4 (a) provides in relevant part: "This section applies to a trial court judgment that disposes of at least one cause of action where the judgment does not dispose of . . . an entire complaint . . . . If the order sought to be appealed does not meet these exact criteria, the trial court is without authority to make the determination necessary to the order's being immediately appealed. . . .

"When the trial court renders a judgment to which this section applies, such judgment shall not ordinarily constitute an appealable final judgment. Such a judgment shall be considered an appealable final judgment only if the trial court makes a written determination that the issues resolved by the judgment are of such significance to the determination of the outcome of the case that the delay incident to the appeal would be justified, and the chief justice or chief judge of the court having appellate jurisdiction concurs.

"If the procedure outlined in this section is followed, such judgment shall be an appealable final judgment, regardless of whether judgment was rendered . . . by summary judgment pursuant to Section 17-44 . . . ." (Citations omitted; emphasis omitted.)

[11] We note that "[w]hether an agreement is supported by consideration is a factual inquiry reserved for the trier of fact and subject to review under the clearly erroneous standard." (Internal quotation marks omitted.) *Kinity* v. *US Bancorp*, supra, 212 Conn. App. 830; see also *Thoma* v. *Oxford Performance Materials, Inc.*, supra, 153 Conn. App. 66 ("the record supports the court's conclusion that the defendant's financing and the plaintiff's continued employment were not predicated on the second agreement's execution"); *Sullo Investments, LLC* v. *Moreau*, 151 Conn. App. 372, 384, 95 A.3d 1144 (2014) ("we conclude that the trial court did not *err* in holding that the consideration underlying the note was the benefit that [the defendant] received in helping [the plaintiff]" (emphasis added)). In the present case, we need decide only whether the legal definition of consideration can include continued employment and whether a genuine issue of material fact exists. Answering those questions in the affirmative, we leave the determination of whether continued employment constituted consideration in this case to

the trial court on remand.

[12] In the motion for a determination in favor of immediate appealability, the plaintiff challenged the court's interpretation of *Thoma* v. *Oxford Performance Materials, Inc.*, supra, 153 Conn. App. 50, and also cited to our Supreme Court's decision in *Roessler* v. *Burwell*, supra, 119 Conn. 289, which we discuss in greater detail. Although the plaintiff did not cite specifically to *Roessler* in its opposition to the defendant's motion for summary judgment or at the hearing, we note that this is not an instance in which a party has raised on appeal an entirely new and separate theory of liability that was mentioned only in passing during oral argument before the trial court. Cf. *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 631–32, 99 A.3d 1079 (2014). Rather, although the plaintiff, in opposition to the defendant's motion for summary judgment, argued that the promotion letter and the nondisclosure agreement were supported by consideration in addition to continued employment, it specifically argued in its motion pursuant to Practice Book § 61-4, relying on *Roessler*, that continued employment was sufficient consideration for the nondisclosure agreement. The defendant filed an opposition to the plaintiff's motion for determination in favor of immediate appealability on January 17, 2020, but he did not assert that the plaintiff's reliance on *Roessler* was improper. Furthermore, the court expressly addressed the applicability of *Roessler* in its decision denying the plaintiff's § 61-4 motion.

Consequently, the plaintiff distinctly raised *Roessler* and the issue of continued employment as consideration before the court, and the court addressed the issue and specifically addressed *Roessler*, albeit in a proceeding subsequent to the granting of the defendant's motion for summary judgment. The plaintiff also has relied extensively on *Roessler* in its appellate brief. Mindful that the present appeal involves a motion for summary judgment, which in turn involves our plenary review of whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law; see *Walker* v. *Lombardo*, 2 Conn. App. 266, 269, 477 A.2d 168 (1984); we conclude that the plaintiff's arguments regarding *Roessler* and whether continued employment, as a matter of law, can be sufficient consideration for a restrictive covenant properly are before this court.

[13] In distinguishing *Roessler* from the present case, the trial court concluded that the defendant in *Roessler* did receive consideration beyond continued employment—"lifetime employment"—when he entered into the written employment agreement. We disagree with the trial court's reading of *Roessler*. The agreement at issue in *Roessler* did not provide the defendant with lifetime employment; it provided only that he would be employed "indefinitely" and could be discharged "for any cause whatsoever . . . ." (Internal quotation marks omitted.) *Roessler* v. *Burwell*, supra, 119 Conn. 290–91. An indeterminate term of employment terminable for any reason is, essentially, the definition of at-will employment. See, e.g., *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 697–98, 802 A.2d 731 (2002) (" '[e]mployment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability' ").

[14] See, e.g., *Piscitelli* v. *Pepe*, Superior Court, judicial district of New Haven, Docket No. CV-04-4002472-S (November 5, 2004) (38 Conn. L. Rptr. 219); *NewInno, Inc.* v. *Peregrim Development, Inc.*, Superior Court, judicial district of Fairfield, Docket No. CV-01-0390074-S (December 3, 2002); *R & C Livolsi, Inc.* v. *Campanelli*, Superior Court, judicial district of New Haven at Meriden, Docket No. CV-97-0259105-S (October 8, 1997); *Daniel V. Keane Agency, Inc.* v. *Butterworth*, Superior Court, judicial district of Fairfield, Docket No. 313181 (February 22, 1995); *Russo Associates, Inc.* v. *Cachina*, Superior Court, judicial district of Fairfield, Docket No. 276910 (January 27, 1995) (13 Conn. L. Rptr. 408); *Nurotocco of Mass., Inc.* v. *Kudlach*, Superior Court, judicial district of Hartford-New Britain, Docket No. CV-92-0453323-S (October 6, 1993).

Additionally, the plaintiff directs us to additional decisions from the Superior Court that have held that continued employment is adequate consideration to support a restrictive covenant. See, e.g., *Grose* v. *Didi, LLC*, Superior Court, judicial district of Hartford, Docket No. CV-17-6079775-S (April 11, 2018) (66 Conn. L. Rptr. 293); *DelVecchio Reporting Services, LLC* v. *Edwards*, Superior Court, judicial district of New Haven, Docket No. CV-16-6061264-S (July 13, 2017); *Discoverytel SPC, Inc.* v. *Pinho*, Superior Court, judicial district of Hartford, Docket No. CV-10-6011816-S (October 14, 2010); *Blum, Shapiro & Co., P.C.* v. *Searles & Houser, LLC*, Superior Court, judicial district of Hartford, Docket No. CV-99-0586283-S (August 11, 1999); *Lester Telemarketing* v. *Pagliaro*, Superior Court, judicial district of New Haven, Docket No. CV-98-0414347-S (September 3, 1998) (23 Conn. L. Rptr. 21).

[15] Federal case law supports the conclusion that continued employment may constitute consideration in this context. In *MacDermid, Inc.* v. *Selle*, 535 F. Supp. 2d 308, 316 (D. Conn. 2008), the United States District Court

for the District of Connecticut stated: "[T]he Connecticut Supreme Court has long recognized that continued employment may suffice as adequate consideration to support a covenant in an at-will employment relationship." See also *United Rentals, Inc.* v. *Distefano*, United States District Court, Docket No. 09-CV-958 (PCD) (D. Conn. November 10, 2009); *Home Funding Group, LLC* v. *Kochmann*, United States District Court, Docket No. 3:06CV1234 (HBF) (D. Conn. June 7, 2007); *United Rentals, Inc.* v. *Bastanzi*, United States District Court, Docket No. 3:05CV596 (RNC) (D. Conn. December 22, 2005); *Sartor* v. *Manchester*, 312 F. Supp. 2d 238, 245 (D. Conn. 2004); *Weseley Software Development Corp.* v. *Burdette*, 977 F. Supp. 137, 144 (D. Conn. 1997).

Additionally, courts across the country likewise have determined that continued employment may serve as consideration in this context. See, e.g., *Condelles* v. *Alabama Telecasters, Inc.*, 530 So. 2d 201, 204 (Ala. 1988); *Lucht's Concrete Pumping, Inc.* v. *Horner*, 255 P.3d 1058, 1059–60 (Colo. 2011); *Breed* v. *National Credit Assn., Inc.*, 211 Ga. 629, 632–33, 88 S.E.2d 15 (1955); *Ins. Associates Corp.* v. *Hansen*, 111 Idaho 206, 207–208, 723 P.2d 190 (App. 1986); *Puritan-Bennett Corp.* v. *Richter*, 8 Kan. App. 2d 311, 314–15, 657 P.2d 589 (1983); *QIS, Inc.* v. *Industrial Quality Control, Inc.*, 262 Mich. App. 592, 594, 686 N.W.2d 788 (2004), appeal denied, 472 Mich. 872, 693 N.W.2d 814 (2005); *Smith, Batchelder & Rugg* v. *Foster*, 119 N.H. 679, 683, 406 A.2d 1310 (1979); *Zellner* v. *Stephen D. Conrad, M.D., P.C.*, 183 App. Div. 2d 250, 255–56, 589 N.Y.S.2d 903 (1992); *Lake Land Employment Group of Akron, LLC* v. *Columber*, 101 Ohio St. 3d 242, 245–48, 804 N.E.2d 27 (2004); *Summits 7, Inc.* v. *Kelly*, 178 Vt. 396, 400–404, 886 A.2d 365 (2005). In explaining the reasoning for this approach, the Wisconsin Supreme Court, in *Runzheimer International, Ltd.* v. *Friedlen*, 362 Wis. 2d 100, 862 N.W.2d 879 (2015), stated: "Jurisdictions that rule forbearance of the right to terminate an at-will employee is lawful consideration . . . typically reason that employees are obtaining the expectation of continued employment, which is not worthless or illusory. The American Law Institute embraces this [majority] view." (Footnote omitted.) Id., 119. The court determined that, in Wisconsin, "[f]orbearance in exercising a legal right is valid consideration"; (internal quotation marks omitted) id., 120; and, therefore, promising not to fire an existing at-will employee in exchange for the employee immediately signing a restrictive covenant was a valid example of forbearance in exercising a legal right. Id., 120–24. It further determined that the court "repeatedly recognized the existence of lawful consideration in the inverse situation—when an at-will employee continues working for the employer in exchange for a modification or addition to the employment agreement. In these situations, the employer is not getting additional consideration for the employee's continued employment, and, in the absence of an employment contract, the employee is still free to leave in the future." (Footnote omitted; internal quotation marks omitted.) Id., 122–23. The court also noted that this view "avoids the temptation for employers to circumvent the law. If we were to hold that consideration beyond continued employment is necessary in cases like this, an employer might simply fire an existing at-will employee and then re-hire the employee the next day with a covenant not to compete." Id., 123.

In contrast, other states have adopted the minority approach, holding that continued employment does not constitute consideration for a restrictive covenant. For example, the Minnesota Supreme Court, in *Davies & Davies Agency, Inc.* v. *Davies*, 298 N.W.2d 127, 130 (Minn. 1980), explained that "cases which have held that continued employment is not a sufficient consideration stress the fact that an employee frequently has no bargaining power once he is employed and can easily be coerced. By signing a noncompetition agreement, the employee gets no more from his employer than he already has, and in such cases there is a danger that an employer does not need protection for his investment in the employee but instead seeks to impose barriers to prevent an employee from securing a better job elsewhere." See also *Hejl* v. *Hood, Hargett & Associates, Inc.*, 196 N.C. App. 299, 304–305, 674 S.E.2d 425 (2009) (restrictive covenant entered into after already existing employment relationship must be supported by new consideration); *Socko* v. *Mid-Atlantic Systems of CPA, Inc.*, 633 Pa. 555, 570, 126 A.3d 1266 (2015) (same); *Labriola* v. *Pollard Group, Inc.*, 152 Wn. 2d 828, 834–36, 100 P.3d 791 (2004) (noncompete agreement entered into after employment must be supported by independent consideration, such as increased wages, promotion, bonus, fixed term of employment or, perhaps, access to protected information; continued employment alone is insufficient).

[16] See, e.g., *Classic Homemakers, LLC* v. *Coolidge*, supra, 65 Conn. L. Rptr. 7 (decisions of Superior Court between 1985 and 2008 go "both ways" on whether continued employment constitutes consideration for at-will employee in context of restrictive covenant).

[17] The plaintiff also claims that, even if continued employment is not sufficient consideration for a restrictive covenant, there is still a genuine issue of material fact as to whether the promotion, and its corresponding financial benefits and additional employment opportunities for the defen-

dant, constituted sufficient consideration to support the nondisclosure agreement, and, therefore, the court erred in determining that no such consideration existed. We agree with the plaintiff. See, e.g., *A.H. Harris & Sons, Inc.* v. *Naso*, 94 F. Supp. 3d 280, 292–93 (D. Conn. 2015); *Weseley Software Development Corp.* v. *Burdette*, 977 F. Supp. 137, 144 (D. Conn. 1997); *Van Dyck Printing Co.* v. *DiNicola*, supra, 43 Conn. Supp. 195–96. We emphasize that the terms of the promotion letter required the defendant to sign the nondisclosure agreement. Additionally, we note that the defendant signed the nondisclosure agreement and the promotion letter sufficiently contemporaneous with the effective date of the promotion, such that a genuine issue of material fact exists as to whether the promotion constituted additional consideration for the nondisclosure agreement. See *Home Funding Group, LLC* v. *Kochmann,* United States District Court, Docket No. 3:06CV1234 (HBF) (D. Conn. June 7, 2007). We need not address this claim further in light of our conclusion that the court incorrectly granted summary judgment on the basis that the restrictive covenant was unenforceable because it lacked consideration.